THE BUFFALO ACADEMY OF THE SACRED HEART, Appellant, *v.* BOEHM BROS., INC., Respondent.

(Argued March 18, 1935; decided April 17, 1935.)

*S. Fay Carr, Maynard C. Schaus* and *Joseph P. Jordan*
for appellant.

*Daniel J. Kenefick, Jr.,* and *John G. Alexander* for respondent.

FINCH, J. This controversy, submitted pursuant to the provisions of the Civil Practice Act (§§ 546–548), presents for determination the question whether title to certain real estate is marketable. The plaintiff agreed to discharge an indebtedness to the defendant by conveying to it good and marketable title to certain realty, the contract further providing that if title should prove

unmarketable the plaintiff would pay the defendant $60,000 in cash. The plaintiff has tendered defendant a deed to the property in question and the defendant has refused to accept, on the ground that title is unmarketable.

It bases its refusal on the following grounds:

1. That the subdivision "University Terrace," in which the lots are situated, is subject to a uniform building plan which restricts the use of each and every lot in said subdivision to the erection of buildings for residential purposes only.

2. That a deed conveying four lots in said subdivision to the Kendall Refining Company prohibited the erection and operation of gasoline filling stations and the sale of motor oil and fuel on any of the lots in the subdivision other than the four so conveyed to the Kendall Refining Company.

The Appellate Division decided against the defendant on the first point, finding that there was no uniform building plan, but granted judgment for the defendant on the ground that the property was subject to a restrictive covenant prohibiting the erection or operation of gasoline filling stations. Defendant, therefore, had judgment in the sum of $60,000.

Taking up the question of a uniform building plan, it is clear that the Appellate Division was correct in deciding that the property was not subject to the restriction of a plan limiting the use of the property to residential purposes. The plaintiff's grantor set up two adjoining subdivisions. They were called "University Terrace, Part One" and "University Terrace, Part Two." Surveys were made, streets and lots laid out, maps prepared and filed in the County Clerk's office. No plan or declaration of a purpose to restrict any particular portion of the subdivisions or lots thereon to residential or other specific purposes was included or indicated in the maps filed, nor do any of the deeds contain covenants on the part of the

grantor that the remainder of the tract should be subject to restriction. The plaintiff's grantor in selling the lots did not follow a uniform policy of development pursuant to which restrictions either for or against the grantees in the various deeds were established. Some lots were restricted to the erection of two-family houses; others to one-family houses. Stores were permitted on some lots, provided no gasoline or oil business should be conducted. In a great number of deeds a "saving clause" was inserted, providing that the grantee obtained no rights in other lots of the subdivision by reason of the restrictive provisions of the deeds. Many deeds contained no restrictions. It is apparent that restrictions were made whenever the grantor thought them necessary or advisable to bring about and maintain the desirability and salability of the property. Clearly he was not following a fixed plan of restricting the use of the lots sold and did not intend to bind himself or his remaining lots by the covenants contained in the deeds which he gave. The defendant emphasizes the "saving clause" found in many of the deeds and seeks to deduce from this that the earlier deeds were in accordance with a plan which restricted the plaintiff's grantor and that, therefore, the clause was inserted to prevent later deeds from carrying the benefit of the covenants already made. The argument cuts both ways. It is equally potent as showing that no general plan to restrict all lots ever was contemplated. If the grantor had in fact restricted all his property in the subdivisions, of what use was the denial of the benefits under the covenants to the later purchasers, when sixty-two prior purchasers already possessed the power to enforce such restrictions? Thus we are brought to the conclusion that no uniform building plan ever came into being.

The defendant next urges that the deed given by the plaintiff's predecessor to the Kendall Refining Company prohibited the erection and operation of a gas filling station upon all the other lots in the subdivision; that,

although no mention of such restriction is made in the deed or chain of title to the plaintiff, it is binding on the property deeded to him; and that, therefore, the title offered to the defendant is not marketable.

The clause in the deed to the Kendall Company reads as follows:

" This conveyance is made and accepted subject to the following restrictions, which shall be covenants running with the land:

" *First:* So long as the said premises shall be used as a gasoline or motor fuel distributing station, the party of the second part or its assigns or successors agree: (a) That any grease pit or pits must and shall be level with the ground. (b) That there shall not be more than 8 pump housings for the distribution of motor oils and fuels. (c) That there shall not be more than one building for the sale or distribution of motor fuels.

" *Second:* That at no time will the said premises be used for what is known as industrial or factory purposes. And the party of the first part covenants that he will not sell, or cause or permit to be sold, gasoline or lubricating oils, or motor fuels, nor erect, or cause to be erected, or permit to be erected, any other gasoline, lubricating oils or motor fuels distributing or sale station or stations upon the entire tracts of land known as University Terrace Number (or Part) 1 and University Terrace Number (or Part) 2; and that in the event that the party of the first part acquires the tract of land adjoining the said University Terrace tracts on the east, or any interest therein, the foregoing restrictive covenants to apply thereto to equal force and effect."

Upon the face of the foregoing deed, the only covenants which expressly are made to run with the land are those imposing obligations upon the Kendall Company, namely, pits must be level with the ground, the number of pump housings and buildings limited and the premises never used for industrial or factory purposes. When the grantor

comes to covenanting on his part he starts covenanting anew and omits, apparently purposely, to provide that such covenant shall run with the land, although having so provided expressly with reference to the covenant on the part of the grantee, less than a dozen lines back in the same instrument. That the covenant on the part of the grantor only purports to be a personal undertaking is strengthened by the fact that the grantor binds himself alone and does not, either expressly or by legal implication, attempt to bind his heirs, grantees or assigns. The grantor's covenant was that he would not sell gasoline and oil or erect filling stations on his remaining lots, but he avoided sedulously any covenant that his grantee would not do these things. Taking the restrictions in the order in which they appear in the deed, we find that those expressly intended to run with the land are the restrictions upon the use of the land conveyed, which are applicable only to it, namely, those limiting the extent and nature of the structures upon the land. The remainder of the covenant is nothing more than an agreement prohibiting the grantor personally from becoming a competitor of the grantee in the filling station business. Nowhere do we find any provision extending such prohibition to the assigns of the grantor.

Thus, the covenant is personal to the grantor and cannot by implication be impressed upon future owners of other premises. The grantor could have made his covenant an obligation upon the lots of the plaintiff by inserting a covenant in the deed prohibiting a gasoline station upon such lots, but the grantor did not do so but gave a deed to the plaintiffs free of any such covenant. Therefore, his obligation under this covenant stopped at himself and never attached to the lots later transferred to the plaintiff. (*Clark* v. *Devoe*, 124 N. Y. 120.)

In *Clark* v. *Devoe* the court said: " In construing the covenant, it is to be observed that the grantor, * * * confined the restriction to himself alone, by agreeing that

he, the grantor, would neither erect or cause to be erected any building that should be regarded as a nuisance. According to the literal, and hence natural, interpretation of this language, the parties meant that the grantor should not personally do or cause to be done any of the inhibited acts. No doubt could arise as to the correctness of this construction, if the parties had not agreed in behalf of themselves and their assigns. The substance of the covenant, however, is limited to the covenantor, and purports to restrict his action only. While the capacity in which he assumes to contract is in behalf of himself and others, the actual contract, or the thing agreed not to be done, is limited to his own acts " (p. 124).

And again: " He did not agree that his * * * assigns should not build but only that he would not build. He used no words that connected anyone except himself with the restriction against building, or that imposed an obligation in that regard upon any other person. It was not a general covenant ' not to erect,' (as in *Phœnix Ins. Co.* v. *Continental Ins. Co.*, 87 N. Y. 400), but a special covenant that the grantor would not erect, showing an intention to contract against the acts of one person only " (p. 125).

Moreover, in construing conveyances containing covenants running with the land, the authorities uniformly hold that restrictive covenants must always be construed strictly against those seeking to enforce them; that they must be construed as they read and not be given a construction extending beyond the literal meaning of their terms. (*Reformed Protestant Dutch Church* v. *Madison Ave. Building Co.*, 214 N. Y. 268; *Schoonmaker* v. *Heckscher*, 171 App. Div. 148; affd., 218 N. Y. 722.)

Assuming, however, that the deed embodies a restrictive covenant running with the land, intended to bind not only the grantor but in addition all the property in the subdivision owned by the grantor, for the defendant to succeed it is necessary also to find that this will bind land

in the subdivision subsequently sold by deeds which make no mention of the covenant and which transfer property to grantees who are unaware of the existence of the covenant. The defendant claims that the mere fact that this one deed contains a restrictive covenant furnished constructive notice to all subsequent purchasers of property from the same grantor. To so claim goes contrary to the well-settled principle that a purchaser takes with notice from the record only of incumbrances in his direct chain of title. In the absence of actual notice before or at the time of his purchase or of other exceptional circumstances, an owner of land is. only bound by restrictions if they appear in some deed of record in the conveyance to himself or his direct predecessors in title. (Clark on Real Covenants and Other Interests which " Run with the Land," p. 162.) This rule would seem to be implicit in the acts providing for the recording of conveyances. Recording constitutes notice only of instruments in the chain of title of the parcel granted. To have to search each chain of title from a common grantor lest notice be imputed would seem to negative the beneficent purposes of the recording acts. (*Schermerhorn* v. *Bedell*, 163 App. Div. 445; affd., 221 N. Y. 536.)

In several States it has been held that a purchaser of a lot which formed part of a larger tract is not charged with notice of restrictive covenants contained in a prior deed from the same grantor to any other lot or parcel of the same general tract, although the deed is recorded and by its terms applies to all other lots. (*Hancock* v. *Gumm*, 151 Ga. 667; *Glorieux* v. *Lighthipe*, 88 N. J. L. 199; *Wichita Valley Ry. Co.* v. *Marshall*, 37 S. W. Rep. [2d] [Tex. Civ. App.] 756; *Yates* v. *Chandler*, 162 Tenn. 388.)

It is true that in some other States it has been held that the recording of such a deed by a common grantor affords notice to .all his subsequent grantees. (*Lowes* v. *Carter*, 124 Md. 678; *Finley* v. *Glenn*, 303 Penn. St. 131.) In New York no authorities in the Court of Appeals have

been brought to our attention which prescribe the principle to be followed. In the Appellate Division there is an instance where a covenant in one deed has been held to affect property subsequently deeded by the common grantor free from the covenant. In that case, however, the covenant in the prior deed sought to establish a front line for adjacent houses. From the facts and circumstances it was held that the defendant had notice of the restrictive covenant in the earlier deed. Any one building in a residential section who projects his house farther into the street line than the adjacent house might be said to be put on notice as to whether he is restricted from so doing, either by a general plan of building or by some right or easement which his adjacent neighbor may have acquired. (*Holt* v. *Fleischman*, 75 App. Div. 593.)

In the absence of exceptional circumstances, the consideration of which we may well leave until they arise, New York should follow the general well-settled principle that a purchaser takes with notice from the record only of incumbrances in his direct chain of title.

The judgment should be reversed and judgment directed in accordance with this opinion, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment accordingly.