William B. Groat, J.
The plaintiff, a tenant of a store in Deepdale Shopping Center, in which it has conducted a dry cleaning and shoe repairing business since 1954, seeks to restrain the defendants from leasing a store in Beech Hills Shopping Center to be used and occupied for the conduct of a similar business and for damages. Both Deepdale and Beech Hills Shopping Centers are located on the southerly side of Horace Harding Boulevard at its intersection with Marathon Parkway in Little Neck, Queens County, New York. Deepdale is on the easterly side of Marathon Parkway and Beech Hills on the westerly side thereof.
Deep Hills Company, a partnership, became the owner of both shopping centers in July, 1953. The plaintiff and Beech Hills Cleaners, Inc., domestic corporations with common stockholders, officers and directors, then were tenants, respectively, of separate stores in each shopping center when erected. Their tenancies stemmed from assignments dated December 1, 1952 of leases dated November 6, 1952 to Herman M. Goodman, as tenant. Each of these leases provided that the respective stores should be occupied for the business of ‘ ‘ Dry cleaning wearing apparel on the premises in all its usual phases, tailoring and shirt laundry, and for no other purpose.”
On July 15, 1953, Deep Hills Company, as landlord, and Beech Hills Cleaners, Inc. and the plaintiff, as tenants, entered into separate agreements modifying their respective leases so as to provide, among other things, for the occupancy of the respective demised premises for shoe repairing as well as dry cleaning in all of its phases. Each modification agreement also provided for the amendment of paragraph “ 59 ” of the respective leases, in pertinent part as follows: ‘ ‘ Provided Tenant is not in default under any of the terms of this lease and further provided Tenant opens demised premises for the conduct of business, Landlord agrees not to lease or rent any other part of the building to be constructed of which the demised premises are a part for the purpose of dry cleaning wearing apparel in all its usual phases, and shoe repairing, during the term of this lease.”
*718 Plaintiff opened its store in the Deepdale Shopping Center in 1954. Beech Hills Cleaners, Inc. never opened its store for business and is not now in any business. It surrendered its lease to its landlord, Deep Hills Company, by an agreement dated September 30,1954, which is the basis of this action. On the same date, said landlord leased the store thus surrendered to Park Finance Corporation for a term of 10 years commencing on October 1, 1954. Paragraph “ 53 ” of that lease provided that the written consent of the landlord to an assignment or subletting of the lease should not be unreasonably withheld: “ except that it is specifically understood and agreed that under no circumstances shall Tenant be permitted to assign or sublet the demised premises to a Tenant for the purpose of a dry cleaning store, which shall be engaged in dry cleaning wearing apparel on the premises in all its usual phases or shoe repairing; this limitation to remain in effect during such period as Deepdale Cleaners Inc. is a tenant in the Deepdale Shopping Center located on the S/S of Horace Harding Boulevard, East of Marathon Parkway, or to a Tenant whose business shall be similar in any way to any then existing tenancy in any part of the building of which the demised premises are a part.”
The agreement, dated September 30, 1954, by which the lease of Beech Hills Cleaners Inc. was surrendered, provided as follows: “5. Landlord agrees that so long as Deepdale Cleaners, Inc., is a tenant in the Deepdale Shopping Center located on the S/S of Horace Harding Boulevard, East of Marathon Parkway and so long as said Deepdale Cleaners, Inc. is not in default with respect to the terms and provisions of its lease, Landlord will not lease any store in the Beech Hills Shopping Center to a dry cleaning or shoe repair store; however in the event that Park Finance Corporation, the prospective tenant of said premises 245-34 Horace Harding Boulevard shall vacate said premises, prior to the expiration of its lease, or such possession by Park Finance Corporation be terminated by Landlord under the provisions of its lease with Park Finance Corporation, Landlord shall be free of any restrictions with respect to a dry cleaning or shoe repair store in the Beech Hills Shopping Center unless, within ten (10) days after written notice by registered mail to Deepdale Cleaners, Inc., said Deep-dale Cleaners, Inc., shall execute a new agreement of lease for said premises 245-34 Horace Harding Boulevard for the balance of the term of the lease made by Landlord with said Park Finance Corporation and on the same terms and conditions as therein provided.”
*719 The answers of the respective parties admit that ‘ ‘ thereafter and by various mesne conveyances the landlord, Deep Hills Company, conveyed the property to the defendants Sydney m. siegel, hugh e. bek, and presently the defendants leah eriedman and barbara gelina are the landlords and owners of the demised premises.” It was conceded at the trial that the property mentioned above had reference to the Beech Hills Shopping Center; that Siegel and Bek took title thereto on January 4, 1956, subject to the lease dated September 30, 1954 between Deep Hills Company and Park Finance Corporation; that they conveyed that property to the defendants Friedman and Gelina on November 27, 1956; the latter, in turn, leased the entire premises on November 28, 1956 to the defendant, Associated Property Management, Inc. for a term of 21 years, commencing on December 1, 1956.
On May 20, 1957, Park Finance Corporation surrendered its lease to the defendants Friedman and Gelina by an instrument dated that day. On the same date, it ceased doing business, surrendered its license to the New York State Banking Department and sold its furniture and fixtures in the store in the Beech Hills Shopping Center to Associated Loan Co., Inc., whose home office is in South Bend, Indiana, and with which Park had no connection, financial or otherwise. Park was dissolved on September 5, 1957, but its president became the manager of the business operated by Associated Loan Co., Inc. in the store Park had vacated, and his wife, who had worked as its cashier, continued in the same capacity with Associated Loan until June 6, 1957.
On August 23, 1957, the defendant, Associated Property Management Inc., the lessee of the Beech Hills Shopping Center for 21 years, leased one of its stores therein to the defendant, Prosperity Leasing Corporation, for a term of five years, to be occupied as “a receiving station for off-premises dry cleaning, dyeing, repairing and laundering and/or storage of wearing apparel, linens, rugs, household furnishings, shoes and kindred services.”
It was conceded at the trial that when the defendants Siegel, Friedman and Associated Property Management Inc. acquired their respective interests in the Beech Hills Shopping Center, they each, in turn, had knowledge of the agreement dated September 30, 1954 containing the restrictive covenant here sought to be enforced. It was also admitted that Associated Property Management Inc., Deep Hills Company and Pros perity Stores. Inc. received a letter, dated August 30, 1957, *720 addressed to them by the plaintiff’s attorney, notifying them of the restrictive covenant contained in said agreement and concluding : “ I call to your attention the restrictive covenant and agreement not to rent these premises for the same business and in the event that the Prosperity Stores Inc. or any other dry cleaning company enters into possession or commences business during the prohibited time of the agreements, then in that event an injunction will be applied for to the Courts restraining the prohibited use and appropriate damages will be in order.”
"While some question was raised at the trial with respect to the existence of a corporation named “ Prosperity Stores Inc.” the answers in this action admitted the existence of Prosperity Leasing Corporation and Prosperity Service Stores Inc., and their attorney produced the registered letter of August 30, 1957 which had been addressed to “Prosperity Stores Inc., 48-12 25th Avenue, Long Island City, New York.” There was received in evidence, as plaintiff’s Exhibit 14, the “ Return Receipt ’ ’ of this addressee signed by one E. Manning, on August 31, 1957. As of March 18, 1957 both Prosperity Stores Inc. and the defendant, Prosperity Service Stores Inc., were listed in the telephone directory from the same address — 48-12 25th Avenue, Long Island City — and as having the same telephone number — “Astoria 4-0300 ”. There is then no question, and the court finds, that both, the defendants Prosperity Leasing Corp. and Prosperity Service Stores Inc., had knowledge of the letter of August 30, 1957. Indeed, both appeared and interposed an answer by the same attorney, which by the very nature of the five defenses therein asserted, and the admissions made at the trial, establish them to be interlocking corporations, which have an arrangement between themselves to carry on the business in the Beech Hills Shopping Center contemplated by the lease, dated August 23, 1957.
The defendants Celina, Bek and Deep Hills Company were not served with process and the action was marked discontinued as to them. The defendants Friedman, Siegel and Associated Property Management Inc. joined in one answer to the complaint. The two defendants Prosperity interposed a separate answer. One of the defenses asserted by all of the answering defendants was to the effect that Park Finance Corporation had vacated the premises and surrendered its lease with Deep Hills Company on May 20, 1957, and that, therefore, by the terms of the agreement of September 30, 1954, the restrictions imposed thereby terminated and became ineffective, *721 leaving Beech Hills Shopping Center free to make the lease to Prosperity of one of its stores to be occupied as a dry cleaning and/or shoe repairing business.
It is quite true that the restrictive covenant was to terminate in the event Park vacated the premises prior to the expiration of its lease or its possession was brought to an end by the landlord under the provisions of the lease. That, however, was not the sole event upon which the termination of the restriction depended, for that contingency was coupled with another, to wit: “unless, within ten (10) days after written notice by registered mail to Deepdale Cleaners, Inc., said Deepdale Cleaners, Inc., shall execute a new agreement of lease for said premises 245-34 Horace Harding Boulevard for the balance of the term of the lease made by Landlord with said Park Finance Corporation and on the same terms and conditions as therein provided.”
While it was conceded at the trial that the plaintiff, Deepdale Cleaners, Inc., did not offer to enter into a lease with the defendant, Associated Property Management Inc., or the owners of the fee, for the balance of Park’s term, it was also admitted that the plaintiff was never sent any notice offering or requesting it to execute such lease as required by the foregoing covenant. Under these circumstances, the court holds that the restrictive covenant was not terminated merely as the result of Park’s surrender of its lease and its vacating the store on May 20, 1957. Nor was it terminated because of a default on the part of the plaintiff with respect to any of the terms of its lease in the Deepdale Shopping Center. The court finds that the plaintiff was not in default.
No proof of damages was attempted at the trial which was confined solely to the question whether the restrictive covenant was violated by the lease to Prosperity, pursuant to which a dry cleaning and shoe repairing establishment would be operated in the Beech Hills Shopping Center. Plaintiff’s claim for injunctive relief was premised upon the assumption that the covenant ran with the land, and if not, the defendants had actual knowledge and notice of its existence.
The court finds, however, that this was not a covenant running with the land. It was a covenant personal to the landlord, Deep Hills Company, a partnership, and no attempt was made, either expressly or by legal implication, to bind its successors and assigns or the heirs, legal representatives and the assigns of the partner, Sam Praver, who executed the agreement for the partnership, or of any other member of that partnership, *722 individually or collectively. Deep Hills Company bound itself alone not to permit a business in Beech Hills Shopping Center in competition with that of the plaintiff located in the Deepdale Shopping Center. (Buffalo Academy of Sacred Heart v. Boehm Bros., 267 N. Y. 242; Clark v. Devoe, 124 N. Y. 120.)
While the absence of an agreement binding a party’s successors, grantees, assigns, heirs or legal representatives is not conclusive (Hodge v. Sloan, 107 N. Y. 244, 251), “ it is, however, another signpost to the correct solution. (McClean v. Woolworth Co., 204 App. Div. 118, 120, affd. 236 N. Y. 612; Perpall v. Gload, 116 Mise. 571, 580-581, affd. 203 App. Div. 871 * * *; Reno, The Enforcement of Equitable Servitudes in Land: Part II, 28 Va. L. Rev. 1067, 1074.) ” (Wolff v. Green, 199 Misc. 758, 763.) Other factors here indicating that the covenant was binding only on the parties thereto are as follows: The agreement was not recorded, nor, indeed, was it recordable, since it contained no description of the premises affected and no acknowledgment except that of the landlord; and it ran to the plaintiff alone — in no respect were its successors and assigns bound. (McGlean v. Woolworth Co., supra.)
Plaintiff contends, however, that the defendants had actual notice of the covenant by reason of its attorney’s letter of August 30, 1957; that consequently, it is entitled to injunctive relief under such authorities as Rubel Bros. v. Dumont Coal & Ice Co. (200 App. Div. 135). In that case, the Second Department, speaking through Mr. Justice, later Presiding Justice, Kebby, said (p. 141): “Assuming without deciding that the learned justice is right in his decision that the restrictive covenant does not run with the land and does not create a negative easement in the restricted parcel for the benefit of the lands owned by the plaintiff, still a court of equity will enforce a restrictive covenant against the grantee of land who took title through a deed reciting the covenant and subject thereto, or against a grantee who took title with full knowledge of its existence although it be omitted in the deed, intentionally or otherwise. Because, as Lord Chancellor Cottenham said in 1848, ‘ the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased.’ (Tulk v. Moxhay, 2 Phill. 774.) The Court of Appeals said through Judge Daxfobth in Hodge v. Sloan (107 N. Y, 244, 250): ‘ In order to uphold the liability of the successor in title, it is not *723 necessary that the covenant should be one technically attaching to and concerning the land and so running with the title. It is enough that a purchaser has notice of it.’ ”
It was conceded that as of October 22, 1957, the date of the trial, the ‘ ‘ Prosperity ’ ’ store was not yet open for business although the term of the lease was to commence on October 1, 1957; that Prosperity Leasing Corp. commenced preparing the store, including a store front, fixtures, and ‘ whatever was necessary, immediately after the signing of this lease ”, and that to the date of the trial, there was expended ‘ ‘ between $3000 and $3,500 in the renovation of the store premises, including the store front, electrical sign, walls, ceiling and woodwork.”
Plaintiff contends that it notified the landlord and Prosperity promptly upon the posting of the sign by the latter that it would engage in the dry cleaning and shoe repairing business in the demised premises and if it “ chose to go right ahead with the work of the renovation, then it was at its own risk and could not come into Court and plead that its position had changed because of any laches on the part of the plaintiff.”
The court is unable to agree with this contention. Prosperity had no knowledge whatever of the existence of the restrictive covenant on August 23, 1957 when it became obligated under the lease executed that day. The first notice of the covenant was brought home to Prosperity on August 31, 1957 when the letter dated August 30,1957, from the attorney for the plaintiff was delivered. Under these circumstances, the rights acquired and the obligation undertaken by Prosperity under it preexisting lease “ Could not thereafter be limited or curtailed by any subsequent notice, oral or otherwise, given by the plaintiff.” (Senn v. Ladd, 179 Misc. 306, 308.) The plaintiff, therefore, is not entitled to injunctive relief. (Hill Top Toys v. Great Atlantic & Pacific Tea Co., 4 A D 2d 691; Cromwell Hardware Long Island Corp. v. Great Atlantic & Pacific Tea Co., 4 A D 2d 690.)
The defendants are entitled to judgment dismissing plaintiff’s complaint, without costs. Settle judgment on two days’ notice.
This opinion constitutes the decision of the court under section 440 of the Civil Practice Act.