Belknap
No. 7453

MEREDITH HARDWARE, INC.

v.

BELKNAP REALTY TRUST

AND

PAUL WIENER d.b.a.
WESTERN AUTO ASSOCIATES STORE

January 31, 1977

*Snierson, Chandler & Copithorne,* of Laconia, and *Edgar D. Mc-Kean III (Mr. McKean* orally) for the plaintiff.

*Norberg & Hunter,* of Meredith (*Mr. Colin A. Norberg* orally) for the defendant Belknap Realty Trust.

*Racine & Gould,* of Meredith (*Mr. Michael E. Gould* orally) for the defendant Paul Wiener.

KENISON, C.J. The defendants appeal from injunctions prohibiting them from doing certain acts in violation of a restrictive covenant against competition contained in the plaintiff's lease for space in the Meredith Shopping Center in Meredith, New Hampshire. In April 1972, the plaintiff, Meredith Hardware, Inc., leased space in the shopping center from the defendant Belknap Realty Trust. The lease provides that the plaintiff may use the leased premises "only for the operation of a so-called Hardware Store and Home Appliance Store and Garden Center." The agreement also contains a restrictive covenant whereby Belknap Realty Trust agreed that no other hardware store would be operated by other tenants in the shopping center or other properties controlled by the landlord in the town. The lease does not define the term "hardware store" nor does it enumerate the kinds of articles generally sold in a hardware store.

On October 30, 1974, the defendant Wiener leased from the defendant Trust the space next door to the plaintiff. Under the terms of his lease, Mr. Wiener was to use the premises "only for the operation of the so-called Western Auto Associate Store." However, the lease does not define the phrase "the so-called Western Auto Associate Store." Article XI of the lease grants to the tenant "the exclusive right to carry on the wholesale and/or retail sales of the automotive or boat accessory lines as well as sporting goods line . . . ."

In a letter to Belknap Realty Trust in December 1974, counsel for the plaintiff Meredith Hardware alleged that the lease between the Trust and Western Auto was in violation of the restrictive covenant in the lease between the Trust and his client. Apparently the merchandise of the two enterprises substantially overlap. Automotive and sporting goods, which constituted at least eighty percent of Mr. Wiener's stock in trade, could be purchased at Meredith Hardware. In addition, nearly everything in the Western Auto catalogue could be purchased either from Meredith Hardware's stock or through the catalogue of its affiliate. The plaintiff believed that such extensive overlap meant that Mr. Wiener was operating a hardware store in violation of the covenant in the plaintiff's lease. However, Mr. Wiener testified that his catalogue sales were negligible and that he is selling and plans to sell only automotive and sporting goods.

The plaintiff's counsel sent a similar letter to Mr. Wiener. At that time, Mr. Wiener had not yet opened for business in the shopping center. He contacted the defendant-lessor who advised him that no conflict existed between the leases. The store opened, and the plaintiff petitioned the superior court to enjoin the defendants from causing a Western Auto Associate Store to be operated in the shopping center.

The Master (*Paul L. Normandin*, Esquire) recommended that certain injunctions issue and the Belknap County Superior Court (*Batchelder*, J.) approved the master's recommendation. All questions of law raised by the exceptions were reserved and transferred to this court.

■ The injunction against Paul Wiener enjoins him, his successors and assigns from using his leased premises, through a catalogue system or otherwise, for a purpose other than the sale of automotive goods, sporting goods and boat accessories. In determining whether the issuance of this injunction was proper, we need not decide whether Mr. Wiener's operations constitute a violation of the restrictive covenant against competition in the plaintiff's lease. The law is clear that the plaintiff, as lessee-covenantee, is not entitled to injunctive relief against the subsequent lessee where the subsequent lessee, Mr. Wiener in this case, is not violating the terms of his own lease and had no actual or constructive notice of the restriction imposed upon his premises by the covenant in the plaintiff's lease. Annot., *Validity, Construction, and Effect of Lessor's Covenant Against Use of His Other Property in Competition with the Lessee-Covenantee*, 97 A.L.R.2d 4, 88 (1964); Note, *Restrictive Covenants in Shopping Center Leases*, 34 N.Y.U.L. Rev. 940, 950–51 (1959).

Mr. Wiener is clearly operating within the terms of his lease. He sells mostly automotive and sporting goods, and his lease not only permits him to sell these lines of goods but also gives him the exclusive right, with an exception not relevant here, to engage in such sales. On the question of notice, the master explicitly found that Mr. Wiener had no actual or constructive notice of the restrictive covenant in the plaintiff's deed and had no duty of inquiry. Note, *supra* at 945–47. Because both conditions for denying injunctive relief are present in this case, the injunction against Paul Wiener should not have been issued. The authorities which

the master cited, *Berman v. Bergenfield Plaza, Inc.*, 16 N.J. Super. 520, 85 A.2d 222 (Ch. 1951), *Varney v. Fletcher*, 106 N.H. 464, 213 A.2d 905 (1965), and the cases cited in Annot., 97 A.L.R.2d at 93–95, do not support the issuance of the injunction. In each of these cases the defendant-subsequent lessee had partial knowledge of the plaintiff's covenant and was enjoined to the extent of that knowledge. The fact that Mr. Wiener subsequently acquired knowledge does not justify curtailing his rights under his own lease. *Deepdale Cleaners, Inc. v. Friedman*, 16 Misc. 2d 716, 184 N.Y.S.2d 463 (Sup. Ct. 1957); *Senn v. Ladd*, 179 Misc. 306, 38 N.Y.S.2d 820 (Sup. Ct. 1942).

The injunction against the defendant Belknap Realty Trust enjoins it, its successors and assigns from leasing premises in the Meredith Shopping Center or any other properties controlled by the Trust in Meredith "for the primary use as a hardware store business encompassing one or more of the following product lines: housewares, seasonal outdoor items, house paints, builders' supplies and building hardware, farm and garden supplies and tools, hand and power tools, mowers and machines, electrical and plumbing supplies, sporting goods and automotive supplies and accessories." The defendant Trust argues that the injunction in effect converts the restrictive covenant in the lease, which prohibits only the leasing of premises to another hardware store, into a covenant prohibiting the leasing of premises to a store which will sell one or more of the enumerated lines of goods. 97 A.L.R.2d at 13–14; *see* Note, *Lessors' Covenants Restricting Competition: Drafting Problems*, 63 Harv. L. Rev. 1400 (1950). In so doing, the Trust contends, the injunction provides much greater protection against competition than the parties intended would be provided by the lease provision itself. Morris, *Shopping Centers—The Role of the Lawyer*, 1955 U. Ill. L.F. 681, 699–700. Moreover, it further argues that such protection severely limits the Trust's ability to attract unique and interesting specialty stores which are essential to the prosperity and commercial success of the shopping center, American Bar Association, Committee on Leases, Drafting Shopping Center Leases *reprinted in* A.B.A. Real Property Division, Real Estate in Midcentury 318, 328 (1974); Morris *supra,* and destroys the minimum competition among stores in shopping centers that is necessary to attract shoppers. Baum, *Lessors' Covenants Restricting Competition*, 1965 U. Ill. L.F. 228, 235–39.

■ To determine whether the injunction is proper, the defendant would have us ascertain not only the exact operative effect of the decree, but also the exact meaning the parties intended to give to the words "hardware store" in the lease. *Association of Portsmouth Teachers v. Portsmouth School Dist.,* 113 N.H. 659, 312 A.2d 573 (1973). Defining the scope of protection in covenants against competition has proven to be a difficult task. *See* Note, *supra,* 34 N.Y.U.L. Rev. at 947–48. Some courts have eased the task by adopting the position that words defining the area of restraint should be construed narrowly. 2 R. Powell, The Law of Real Property § 242[2] [c] (1976 and Supp.); Note, *supra,* 63 Harv. L. Rev. at 1404. In this jurisdiction we have expressed our disfavor with contracts in restraint of trade or competition and stated that they are not to be extended by construction beyond the fair import of the language contained therein. *Dunfey Realty Co. v. Enwright,* 101 N.H. 195, 138 A.2d 80 (1957). However, legal maxims and general principles are of little aid when we are called upon to determine what a hardware store sells or, more precisely, what a store must sell before it may be labelled a "hardware store." In similar situations courts have had to resort to functional retailing judgment, *see* Eagle, *Shopping Center Control: The Developer Beseiged* [sic], 51 J. Urb. L. 585, 617 (1974), instead of strict legal reasoning.

■ Rather than engage in such speculation, we believe that it is more appropriate to dispose on another ground the issue of the propriety of the injunction against the Trust. A plaintiff seeking an injunction must demonstrate that there is an immediate threat of harm. O. Fiss, Injunctions 9 (1972). A mere possibility or fear that injury will occur is insufficient to justify granting equitable relief. *Connecticut v. Massachusetts,* 282 U.S. 660 (1931); 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2942, at 369 (1973). The restraining power of equity cannot be invoked without a showing that repetition of the act is probable. *Perley v. Effingham,* 94 N.H. 120, 48 A.2d 484 (1946). There is no suggestion in the transcript, briefs, or reserved case that the defendant-lessor will, or is even likely to, rent a portion or portions of any other unleased premises to any store in a manner that might violate the plaintiff's protective guarantee. If this were not the case some equitable relief would most likely be warranted. The

plaintiff is not entitled to an injunction as against the lessor with respect to the premises leased to Mr. Wiener because the lease was signed prior to suit and Mr. Wiener had no notice. Under such circumstances, and absent a showing of the likelihood of a future violation, it has been held that no equitable relief against the lessor is appropriate. Annot., 97 A.L.R.2d at 121. The injunctions are therefore dissolved.

*So ordered.*

DOUGLAS, J., did not sit; the others concurred.