OPINION OF THE COURT
Martin B. Stecher, J.
This is an action for a declaratory judgment, and for incidental relief in which the plaintiff, a tenant of vacant land in Manhattan used as a parking lot, seeks to have adjudicated its rights in the property, the rights of the landlord and of the prospective successor tenant. The defendant landlord counterclaims for a declaratory judgment and for damages.
After trial without jury I make the following findings:
The defendant Shelton Towers Associates (Shelton) is a partnership presently holding the fee to the subject real property. On June 20, 1972, and again on December 10, 1975, leases were entered into between Shelton’s predecessors in interest and the plaintiff. Pursuant to the terms of the latter lease, the real property in question was leased to the plaintiff on a month-to-month basis "until terminated by a 30 day notice. Landlord and tenant expressly agree[d] that the thirty (30) day notice required under Section 232-A of the Real Property Law may be given at any time during the term.” The latter lease further provided that "time is of the essence in connection with the delivery of the Premises to Landlord on the Termination Date fixed in any termination notice” and that lease further provided that "the Tenant shall at Land *1041 lord’s option become liable to the Landlord for the sum of six thousand ($6000) dollars per day for each and every day that Tenant remains in possession in violation of the lease and/or any notice of termination.”
Paragraph 21 of the 1975 lease provides in part as follows: "The covenants and agreements contained in this Lease shall be binding and inure to the benefit of the parties hereto, their respective successors, personal representatives and permitted assigns. * * * In the event of termination of this Lease for any reason other than a default by Tenant and/or Tenant’s agents or designees, Landlord agrees that provided Landlord or any of its affiliates or subsidiaries holds fee or leasehold title to the Premises, Landlord will not lease the Premises to any party other than Tenant for the same use permitted under this Lease for the period beginning on the date of Notice of Termination and ending one (1) year thereafter.” (Emphasis supplied.)
Subsequent to the execution of the 1975 lease, the realty was sold to Shelton. Shelton, it appears, intended to renovate and operate the hotel adjoining the leased premises, has given notice to the plaintiff of the lease’s termination, demanded that the plaintiff quit the premises and has entered into a lease with the codefendant, Martin Meyers Associates, Inc. (Meyers) to operate a parking lot on the leased property . In effect, what the plaintiff wishes to do is to prevent Shelton from terminating its lease and from doing anything inconsistent with the plaintiff’s occupancy. It seeks enforcement of the provision of the lease prohibiting the leasing of the premises to another garage operator for a period of one year. The plaintiff would, by implication, expand this covenant to prohibit Shelton itself from operating the premises as a parking lot for a period of one year.
The initial transaction which gave rise to the lease followed the assemblage by the lessor of a parcel of property in midtown Manhattan upon which the lessor intended to build a commercial high-rise building. The intention of the parties to the lease was to lease the property to the plaintiff for use as a parking lot with the understanding that the plaintiff would, in no way, inhibit demolition, excavation and construction but would leave the premises promptly when requested. The plaintiff was perfectly willing to enter into such an agreement but was concerned only that its landlord not terminate the lease in order to replace the plaintiff with a *1042 different parking lot operator. Shelton, however, was not a party to the lease and whatever unrevealed considerations the parties to the lease had in mind when it was executed will not bind Shelton except to the extent that such intent is revealed by the language of the agreement.
The provision of the lease which would inhibit the reletting of the parking area for the purposes of parking after the involuntary termination of the plaintiffs lease is expressly conditioned on the existence of a leasehold or fee interest in the then "landlord or any of its affiliates or subsidiaries.” Such a covenant was not intended to bind any successor to the original landlord. It is a personal covenant and will not be construed to bind any but the landlord signatory to that lease or its affiliates or subsidiaries. "Restrictive covenants must always be construed strictly against those seeking to enforce them; * * * they must be construed as they read and not be given a construction extending beyond the literal meaning of their terms” (Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242, 249).
The plaintiff points to the general provision quoted above that "the convenants and agreements contained in this lease shall be binding and inure to the parties hereto, their respective successors, personal representatives and permitted assigns.” Clearly, there is a conflict in the two quoted paragraphs of article 21 of the 1975 lease. The one relied on by the plaintiff was called "boilerplate” by its witness, the attorney who drafted the provisions. The paragraph limiting the obligation to the then lessor, its affiliates or subsidiaries, was a negotiated clause. The first was general, the second specific. An inconsistency between a general and a specific clause must be resolved in favor of the specific (Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46; Madison 52nd Corp. v Empire Trust Co., 12 AD2d 600, affd 10 NY2d 873).
The plaintiffs reliance on Silverstein v Shell Oil Co. (40 AD2d 34) is misplaced. There, the plaintiffs testator conveyed a parcel of land in fee to the defendant oil company and covenanted not to allow other property owned by him within 2,500 feet of the deeded property to be used, for a period of 50 years, for the sale of petroleum products. From the facts of the case it was clear that it was intended that the covenant run with the land, that it was not merely personal and that it was intended to protect the defendant’s business interest in the conveyed property from competition. As such, the cove *1043 nant was sustained. The Silverstein case clearly differs on its facts from the case at bar and is no authority to declare this covenant to run with the land.
There is another reason, of course, for not enforcing the covenant against Shelton. Subdivision 1 of section 1951 of the Real Property Actions and Proceedings Law provides that "[n]o restriction on the use of land created * * * by covenant, promise or negative easement * * * be declared or determined to be enforceable, if, at the time the enforceability of the restriction is brought in question, it appears that the restriction is of no actual or substantial benefit to the person seeking its enforcement * * * [stating reasons] or for any other reason.”
The only benefit claimed by the plaintiff is set forth in its memorandum of law as follows: "[t]he substantial benefit is that the restriction prohibits the defendant from terminating the plaintiff’s month-to-month lease to put into possession a rival parking operator who may pay more rental or who may be more to the liking of the landlord.”
This is not the benefit the statute contemplated; for by the terms of the lease, the fee owner’s right to terminate the lease is absolute. Once the right to terminate is exercised, no interest of the plaintiff remains to be protected. If the parties had intended to limit the right of termination, they would have expressed that intent in the lease. They failed to do so. With termination of the lease, no substantial benefit remains to be protected by the covenant.
I hold that the statute, once the lease is terminated, bars the covenant’s enforcement. The covenant is thus of no actual or substantial benefit to the plaintiff.
I hold that the lease between Shelton’s predecessors and the plaintiff does not prohibit the exercise of the termination clause regardless of Shelton’s motive for termination. The lease does not prohibit Shelton from thereafter operating the premises as a parking lot itself, nor does it operate to prevent Shelton from leasing the premises to another for the same purpose.
 The defendant Shelton has counterclaims for damages at the rate of $6,000 per day because of the plaintiff’s failure to quit the premises. From the testimony presented to me, it is clear that the sum of $6,000 per day was not an effort to estimate the true damages which the landlord would sustain should the tenant refuse to remove promptly from the prem *1044 ises, nor does it appear from the evidence that the landlord’s actual damage is anything approaching $6,000 per day; in fact, no actual damage whatever was proved. The converse is clear; the intention of the lease was to impose a severe penalty on the plaintiff should plaintiff fail to remove promptly. In short, it was intended as an inducement for the tenant to leave rather than an estimate of the damages. As such, it is a contract calling for a penalty and is unenforceable (Seidlitz v Auerbach, 230 NY 167). As indicated above, no damages have been proved. The law, however, presumes damage for breach of a contract; therefore, nominal damages of $1 will be awarded to the defendant Shelton on its first counterclaim.
The second counterclaim seeking damages of $25,000 a day has been withdrawn "without prejudice”. The third and fourth counterclaims which seek declarations have been disposed of in the foregoing opinion.