**GENOVESE DRUG STORES, INC.,**
Plaintiff-Appellee,

v.

**CONNECTICUT PACKING COMPANY, INC., et al., Defendants,**

and

**Fotomat Corporation,**
Defendant-Appellant.

**No. 493, Docket 83–7540.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1983.
Decided April 6, 1984.

Mark R. Kravitz, New Haven, Conn. (Shaun S. Sullivan, Wiggin & Dana, New Haven, Conn., on the brief), for defendant-appellant.

Thomas A. Rouse, Hartford, Conn. (Barry S. Feigenbaum, Martin H. Sokolow, Jr., Byrne & Slater, P.C., Hartford, Conn., on the brief), for plaintiff-appellee.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Fotomat Corporation ("Fotomat") appeals from an order of the District Court for the District of Connecticut (T. Emmet Clarie, Judge) granting a motion by Genovese Drug Stores, Inc. ("Genovese") for a preliminary injunction barring Fotomat from operating a film processing business from a kiosk constructed in the parking lot of a shopping center in which Genovese rents space for operation of a drug store. The injunction was issued to enforce a restrictive covenant in Genovese's lease. Since the undisputed facts establish that Fotomat had neither actual nor constructive notice of the restrictive covenant at the time it leased the portion of the parking lot on which its kiosk stands, we vacate the injunction and direct that judgment enter in favor of Fotomat.

### Facts

The litigation concerns a shopping center in Bloomfield, Connecticut. The property on which the shopping center is located was purchased in 1947 by defendant Connecticut Packing Company, Inc. ("Copaco"), a Connecticut corporation. One-third of the shares of Copaco are owned by Irving Bercowetz, one-third by Herman Bercowetz, and one-third by Israel and Rhoda Rosenthal. In 1970 Copaco conveyed a portion of the Bloomfield property to Bercrose Associates ("Bercrose"), a Connecticut partnership composed of Irving and Herman Bercowetz and Israel Rosenthal, three of the four owners of Copaco. In 1971 Copaco and Bercrose executed an agreement ("Joint Development Agreement") concerning the shopping center property. A "whereas" clause of the Joint Development Agreement recited that it was the parties' desire, "notwithstanding their separate ownership of ... portions of the shopping center," to "develop, construct, operate and manage said shopping center as one, fully-integrated facility so that neither the business establishments located therein nor their customers will be affected, in any practical respect, by the separate ownership of portions thereof." An operative provision of the Joint Development Agreement provided:

> Neither of the parties shall build or erect, or suffer to be built or erected, any building or structure upon any portion of the property owned by it which is ... used or reserved as a common area for the use and benefit of the entire shopping center, including ... areas shown as parking ... unless the party desiring to erect such additional building(s) or structure(s) shall have first obtained the written consent of the other party.

The Joint Development Agreement was recorded on the land records of the Town of Bloomfield and listed in the grantor index under the names of both Copaco and Bercrose.

On October 16, 1971, Bercrose leased a portion of its part of the shopping center property to Genovese for the operation of a retail drug store. The Bercrose-Genovese lease contained a restrictive covenant in which Bercrose agreed that it would not demise any portion of the shopping enter to any "drive-in operation whose principal business is the receipt and processing of photographic film for development, including, but not limited to, drive-ins known as 'Foto-Mat'." Concurrent with the execution of the lease, Irving Bercowetz, acting in his capcity as president of Copaco, executed a statement entitled "Consent and Agreement" ("Consent"), in which Copaco agreed to be bound by the lease terms with respect to the portions of the shopping center owned by Copaco. The Consent was appended to the Bercrose-Genovese lease. On March 10, 1972, pursuant to Conn.Gen. Stat. § 47-19 (1977) which provides for the recording of a "notice of lease" in lieu of the lease document, a Memorandum of Lease was recorded on the Bloomfield land records and indexed under the name of

Bercrose as grantor and Genovese as grantee. As required by section 47–19, the Memorandum of Lease states the location where the lease is on file, in this case, the offices of Bercrose's attorneys. The Memorandum of Lease makes no mention of the restrictive covenant prohibiting drive-in photo kiosks nor of the Consent in which Copaco agreed to be bound by the terms of the Bercrose-Genovese lease.

In 1982 Fotomat negotiated with Philip Johnson, who was in charge of leasing for both Copaco and Bercrose, to lease space at the shopping center. Ultimately they agreed upon the leasing of space for a drive-in kiosk in the parking lot of the shopping center. The kiosk was initially planned to be located on the Bercrose portion of the shopping center property, but was finally decided to be placed on the portion owned by Copaco. In June of 1982, Copaco, acting by its president Irving Bercowetz, executed a lease with Fotomat for a 36-square-foot portion of parking lot owned by Copaco. At no time during the lease negotiations did Johnson, Irving Bercowetz, or anyone else inform Fotomat of the restrictive covenant in the Bercrose-Genovese lease. Fotomat did not make a title search of the land records concerning the 36-square-foot area it was leasing, relying instead on a guarantee from Copaco that there were no restrictions on Fotomat's use

of the property for operation of a drive-in kiosk.

Fotomat began site preparation and, on September 16, 1982, placed on its leased space a prefabricated kiosk. Eight days later Genovese made demand upon Johnson to have the kiosk removed and on November 9, 1982, filed suit in the District Court against Copaco, Bercrose, and Fotomat. Operation of the kiosk has been prohibited since that date, initially by a temporary restraining order, which was extended by stipulation, and ultimately by the preliminary injunction challenged on this appeal.

### Discussion

In issuing the preliminary injunction, 563 F.Supp. 1299, the District Court made several determinations, but in resolving this appeal, we need consider only the Court's conclusion that Fotomat had constructive notice of the restrictive covenant in the Bercrose-Genovese lease.[1] At oral argument the parties agreed that the correctness of this conclusion can be determined on the undisputed facts and that, if this Court ruled that the undisputed facts already established did not suffice to give Fotomat constructive notice of the restrictive covenant, Genovese's claim against Fotomat could be finally adjudicated without the need for a plenary trial.[2] It is undis-

---

1. Though we need not consider all of the other conclusions reached by the District Court, we pause to comment upon one of them. Recognizing that state law governs this diversity action, the District Court cited *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir.1981), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982), and *Franke v. Wiltschek*, 209 F.2d 493 (2d Cir.1953), for the proposition that "[w]here injunctive relief is sought, a federal court must look to state law to determine whether a party is entitled to equitable remedial rights." 563 F.Supp. at 1304. The Court then relied upon *Hartford Electric Light Co. v. Levitz*, 173 Conn. 15, 376 A.2d 381 (1977), for the proposition that "an action for the enforcement of a restrictive covenant is an exception to the general rule that substantial irreparable injury must threaten before an injunction will issue." 563 F.Supp. at 1304.

Whatever rule is to be derived from *Perfect Fit* and *Franke,* it does not permit a district court exercising diversity jurisdiction to ignore the federal law requirement that threatened irrepa-

rable injury be shown before a *preliminary* injunction may issue. *See System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1141 (3d Cir.1977); *but see Borman's, Inc. v. Great Scott Super Markets, Inc.*, 433 F.Supp. 343, 346 (E.D.Mich.1975). We express no view on Genovese's contention that, even if federal law establishes an irreparable injury requirement for a district court's grant of a preliminary injunction, state law supplies the standard in a diversity case for determining whether a threatened injury is irreparable; nor do we express any view on the Connecticut standard.

2. Each side contends that the undisputed facts suffice to support its position on the issue of constructive notice. In addition, Fotomat contends that its position draws further support from the testimony of a witness who furnished expert opinions on the subject of title search law and practice in Connecticut. Our resolution of this appeal is based solely on the undisputed facts, and no consideration has been given to the witness's testimony.

puted that Fotomat had no actual notice of the restrictive covenant.

The District Court rested its conclusion as to constructive notice on two subsidiary determinations. First, Judge Clarie ruled that the recordation of the Memorandum of Lease in compliance with Conn.Gen.Stat. § 47–19 provided adequate notice of all the terms of the Bercrose-Genovese lease, including the restrictive covenant. Second, the District Judge ruled that under all the circumstances Fotomat had a duty to search the land records under the chains of title of both Copaco and Bercrose. In support of this second determination, Judge Clarie noted the following: The Joint Development Agreement was recorded in the chains of title of both Copaco and Bercrose and would have been discovered had Fotomat searched the chain of title of its lessor, Copaco; notice of the Joint Development Agreement would have alerted Fotomat to the requirement of consent by owners of both portions of the shopping center for any construction in the parking area; Fotomat did not obtain the written consent of both owners; the Joint Development Agreement recites that the separate ownership of portions of the shopping center by Copaco and Bercrose would have no practical effect on tenants; and "the commonality of ownership between Bercrose and Copaco, which share the same owners, as well as the same business address and key employees, suggests that Bercrose and Copaco cannot fairly be treated as separate entities." 563 F.Supp. at 1306.

We start from two premises of real estate law that enjoy support in Connecticut and elsewhere. First, since restrictive covenants, especially those endeavoring to restrict commercial activity for competitive advantage, are not favorites of the law, those who seek to benefit from them must expect that their terms and effectiveness will be strictly construed. *See Saphir v. Neustadt*, 177 Conn. 191, 204, 413 A.2d 843, 851 (1979); *Pulver v. Mascolo*, 155 Conn. 644, 649, 237 A.2d 97, 99–100 (1967); C. Clark, *Real Covenants and Other Interests Which "Run With*

*Land"* 105, n. 38 (2d ed. 1947); 3 M. Friedman, *Friedman on Leases* § 28.1 at 1239–40 (2d ed. 1983). Second, the rules concerning land records and the constructive notice they provide should be relatively uncomplicated and should promote a high degree of certainty as to the extent of searching necessary to afford protection to buyers. *See Sadd v. Heim*, 143 Conn. 582, 585, 124 A.2d 522, 524 (1956); *Second National Bank v. Dyer*, 121 Conn. 263, 271, 184 A. 386, 389 (1936); *Hawley v. McCabe*, 117 Conn. 558, 564, 169 A. 192, 194 (1933); *see also Buffalo Academy of the Sacred Heart v. Boehm Bros.*, 267 N.Y. 242, 250, 196 N.E. 42, 45 (1935); *Glorieux v. Lighthipe*, 88 N.J.L. 199, 203, 96 A. 94, 95–96 (1915); 4 *American Law of Property* § 17.17 at 592–93 (Casner ed. 1952).

With these premises in mind, we turn to the issue of whether the Bloomfield land records gave Fotomat constructive notice of Genovese's restrictive covenant. We are not as certain as Judge Clarie that Connecticut courts, which appear not yet to have faced the issue, will construe section 47–19 to mean that recordation of a notice of lease provides constructive notice of a restrictive covenant contained in that lease, at least a covenant burdening property other than the leased premises by restricting commercial activity for competitive advantage. Other states construing similar statutes have obliged the beneficiaries of restrictive covenants to record them, ruling that notices of lease provide constructive notice only of terms that do not implicate the rights of third parties, unless they are endeavoring to acquire an interest in property subject to the notice of lease. *See, e.g., Howard D. Johnson Co. v. Parkside Development Corp.*, 169 Ind.App. 379, 348 N.E.2d 656, 661 (1976). *See generally* 3 Friedman, *Friedman on Leases, supra*, § 31.2; Report of Special Committee on Leases, *Some Considerations to be Observed in the Recording of Leases*, 12 Real Prop., Prob. & Trust J. 256, 264–67 (1977).

We need not construe the application of section 47–19 to restrictive covenants, however, because we disagree with

the District Court's view that Fotomat had a duty to search the Bercrose chain of title, in which the Memorandum of Lease was recorded. The traditional rule is that a purchaser or lessee of property is charged with constructive notice only of those encumbrances that appear in his direct chain of title.[3] *Hawley v. McCabe,* 117 Conn. 558, 563–64, 169 A. 192, 194 (1933); *Wheeler v. Young,* 76 Conn. 44, 50–51, 55 A. 670, 673 (1903); *see* 3 Friedman, *Friedman on Leases, supra,* § 28.601; Clark, *Real Covenants, supra,* at 183; *Connecticut Standards of Title* § 2.3 (Ct.Bar Ass'n 1980); Philbrick, *Limits of Record Search and Therefore of Notice,* 93 U.Pa.L.Rev. 125, 174 (1944). As a lessee of Copaco, Fotomat had no obligation, as a general matter, to search the chain of title of any entity other than Copaco.

Nor do we agree that any circumstances of this case placed a special obligation on Fotomat to search beyond the Copaco chain, specifically to examine the Bercrose chain. The happenstance that Fotomat initially contemplated placing its kiosk on the Bercrose portion of the property is irrelevant. A lessee has constructive notice of what would be disclosed by a search of the chain of the lessor from whom it acquires an interest, not one from whom it once considered leasing.

Of more arguable relevance is the fact that a search of the Copaco chain would have disclosed the Joint Development Agreement. Knowledge of that agreement would have alerted Fotomat to the requirement of the written consent of both owners for any construction in the parking area. But knowledge of that requirement would not have obliged Fotomat to search the Bercrose chain to see if by chance Bercrose had restricted its authority to give consent.[4] The consent requirement gave each of the contracting parties to the Joint Development Agreement an enforceable right against the other. Fotomat's failure to learn of the consent requirement and its failure to insist on seeing evidence of Bercrose's written consent to the proposed kiosk exposed it to the risk that Bercrose, having recorded the parking-area-construction restriction on Copaco's property under the Copaco chain of title, might object to any construction undertaken by a Copaco lessee without Bercrose's written consent.[5] However, Fotomat did not assume any risk of objection by a lessee of Bercrose, simply because the Joint Development Agreement existed. That point was clear to Genovese because it did not rely on the Joint Development Agreement to protect itself against Copaco and Copaco's lessees, after it had obtained the restrictive covenant from Bercrose. Instead, Genovese, as it was obliged to do as a first step toward protection from competitive activity on Copaco's property, secured the written agreement of Copaco to the terms of the Bercrose-Genovese lease. What Genovese failed to do was take the required second step of re-

**3.** Indeed, there is some force to Fotomat's argument that knowledge of the Joint Development Agreement would have suggested to Fotomat that Bercrose would not encumber or restrict Copaco's portion of the shopping center without Copaco's written consent and that the absence of a written consent by Copaco in Copaco's chain of title would provide Fotomat with a justifiable basis for believing that Bercrose had not made any agreement that purported to restrict the Copaco property.

**4.** There is some variation among states as to whether a lessee or purchaser must search all chains of title from a common grantor. *Compare Guillette v. Daly Dry Wall, Inc.,* 367 Mass. 355, 325 N.E.2d 572, 574–75 (1975) (must search all conveyances from common grantor), *with Buffalo Academy of the Sacred Heart v. Boehm Bros.,* 267 N.Y. 242, 250, 196 N.E. 42, 45 (1935) (need search only land records covering specific parcel conveyed). *Dick v. Sears-Roebuck & Co.,* 115 Conn. 122, 160 A. 432 (1932), has been cited for the proposition that a tenant must "examine the contents of all the deeds given by his grantor (and presumably of all his predecessors in title)." Note, *Restrictive Covenants in Shopping Center Leases,* 34 N.Y.U.L.Rev. 940, 946 & n. 48 (1959). Properly read, that case merely requires a lessee to examine the deed his grantor received from his predecessor in title. Even if read broadly, that decision would not require Fotomat to search the chain of Bercrose, which was not its lessor.

**5.** Bercrose has made no objection to the Fotomat kiosk and is not suing to enforce its rights under the Joint Development Agreement.

cording Copaco's restriction upon its own property in Copaco's chain of title, where it would give constructive notice to a lessee of Copaco.

■ True, knowledge of the Joint Development Agreement would have alerted Fotomat to the recited intention of Copaco and Bercrose not to let their ownership of separate portions of the shopping center affect business establishments in the center "in any practical respect." That recital has no bearing on Genovese's rights for two reasons. First, an expression of intent in a "whereas" clause of an agreement between two parties may be useful as an aid in construing the rights and obligations created by the agreement, but it cannot create any right beyond those arising from the operative terms of the document. Second, even an agreement between private parties cannot alter the obligations that the law imposes upon a buyer or lessee concerning the scope of a title search. Parties may, within limits, encumber property,[6] but they cannot set the ground rules as to what type of recordation constitutes constructive notice of their restrictions.

■ More plausible still, but not persuasive, is the District Court's "suggestion" that Copaco and Bercrose cannot be treated as separate entities. There are surely points of commonality between the two entities. But it would be going rather far to hold that either is a sham structure to be disregarded in favor of ownership by the other of the entire property. Moreover, even if for some purposes the separate identities of Copaco and Bercrose could be disregarded, we see no basis in Connecticut law, or comparable law that might supply guidance from other states, that the separateness of corporate and partnership entities should be disregarded for purposes of searching titles. The doctrine of piercing a corporate veil, or disre-

garding any formal business structure, was developed to ensure that those who suffer injury will not be blocked by the interposition of a sham structure from recovering against persons who should be responsible for the loss. In the context of this case, that doctrine, if applicable, might have aided Genovese in looking directly to Copaco for damages caused by Bercrose, if Copaco had not formally agreed to the terms of the Bercrose-Genovese lease. But we know of no authority for disregarding the formal identity of a grantor and imposing a duty to search the chain of title of some other entity, simply because of its close relationship to the grantor. A title searcher must be able to rely on the identification of the grantor in a proposed deed or lease; he need not investigate the business relationship between that grantor and some other entity and speculate whether some court may hold him to a duty to search the chain of title of that other entity.

Since we hold that Fotomat had no duty to search the Bercrose chain of title, Fotomat had no constructive notice of the restrictive covenant, and the fact that it made no title search, relying instead on Copaco's guarantee, is of no consequence. As the beneficiary of a restrictive covenant, Genovese had the obligation to give its potential competitors constructive notice of the restriction it had obtained on their ability to compete from premises located on property owned by Copaco. It could easily have done so by recording on the land records under Copaco's name the agreement by which Copaco bound itself to honor the restrictive covenant in the Bercrose-Genovese lease. Having failed to do so, it should not expect a diversity court to predict that a Connecticut court would enlarge the duty of a title searcher for a lessee to search beyond the chain of its lessor's title under the circumstances of this case.[7]

---

6. For example, in this case, Fotomat would presumably have had an obligation to search the Bercrose chain if in the Joint Development Agreement Copaco and Bercrose had both agreed to encumber both properties with any covenants granted by either owner to its lessees. See generally Philbrick, Limits of Record Search

and Therefore of Notice, 93 U.Pa.L.Rev. 125, 174 & n. 160 (1944).

7. We need not reach Fotomat's argument that, even if it had a duty to search the Bercrose chain, that search would not have discovered Copaco's agreement to be bound by the Berc-

On the undisputed facts, Fotomat is entitled to have the preliminary injunction vacated and to have the claims against it dismissed. *See Triumph Hosiery Mills, Inc. v. Triumph International Corp.,* 308 F.2d 196, 200 (2d Cir.1962) (complaint dismissed on reversal of preliminary injunction); *see also Hurwitz v. Directors Guild of America, Inc.,* 364 F.2d 67, 70 (2d Cir.), *cert. denied,* 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962 at 629 (1973).

Dismissal of the claims against Fotomat leaves pending Genovese's damage claims against Bercrose and Copaco. Though Genovese cannot secure injunctive relief against Bercrose or Copaco that would impair Fotomat's rights, it remains to be determined whether Genovese can secure damages from Bercrose for breach of the covenant in the Bercrose-Genovese lease and from Copaco for breach of Copaco's Consent, in which it agreed to be bound by the terms of Genovese's lease with respect to the portions of the shopping center owned by Copaco. Even though Bercrose did not give written consent to Fotomat, the conduct of Bercrose in connection with the negotiation of Fotomat's lease and Bercrose's relationship with Copaco may well render Bercrose liable for breach of its restrictive covenant, and, in any event, Copaco may well be liable on its Consent agreement. *See Reeve v. Hawke,* 37 Del.Ch. 25, 136 A.2d 196 (1957) (covenantee may obtain damages from landlord for landlord's breach of restrictive covenant, but, in absence of notice to lessee, may not obtain injunctive relief against landlord or lessee); *Senn v. Ladd,* 179 Misc. 306, 38 N.Y.S.2d 820 (N.Y.Sup.Ct.1942) (same). Alternatively, perhaps as a third-party beneficiary of the Joint Development Agreement

Genovese may be able to recover damages from Bercrose and Copaco for permitting construction in the parking area without obtaining the required written consent.

Injunction vacated and case remanded for further proceedings consistent with this opinion. Fotomat may recover its costs on appeal.

---

rose-Genovese lease, since Copaco's agreement was not recorded. We doubt that Connecticut would construe section 47–19 to mean that Bercrose's notice of lease, which a search of Bercrose's chain would have discovered, gives constructive notice not only of all the terms of the lease but also of the terms of another party's agreement burdening that party's property, even though the agreement is appended to the lease.

And we are uncertain whether Connecticut courts would consider constructive notice of the restrictive covenant (assuming such was given by the notice of lease) sufficient to enforce the covenant against Copaco's lessee in the absence of constructive notice to the lessee of Copaco's consent to the covenant. In this diversity case, we deem it best to leave such issues for the state courts in subsequent cases.