OPINION OF THE COURT
Bellacosa, J.
Plaintiff Witter and defendants Taggarts are East Islip neighboring property owners. Their homes are on opposite sides of a canal on the south shore of Long Island. Witter’s home is north of the canal and the Taggarts’ home and dock are across the canal on the south side. The Winganhauppauge or Champlin’s Creek lies immediately west of both parcels. Their property dispute arose when the Taggarts erected a 70-foot long dock on their canal-side frontage. This was done after a title search revealed that their deed expressly permitted building the dock and reflected no recorded restrictions in their direct property chain against doing so. Witter complained of a violation of his scenic easement to an unobstructed view of the creek and an adjacent nature preserve, which he claims is protected by a restrictive covenant contained in his chain of title. He sued to compel the Taggarts to dismantle and remove the dock and to permanently enjoin any such building in the future.
Supreme Court granted the Taggarts’ motion for summary judgment dismissing Witter’s complaint and denied Witter’s cross motion for summary judgment. Relying principally on Buffalo Academy of Sacred Heart v Boehm Bros. (267 NY 242), the trial court held that the Taggarts are not bound by or charged with constructive notice of a restrictive covenant which does not appear in their direct chain of title to the allegedly burdened land. Although it noted a possible conflict between Buffalo Academy (id.) and our affirmance of the result in Ammirati v Wire Forms (273 App Div 1010, affd without opn 298 NY 697), the court distinguished and explained away the conflict.
The Appellate Division affirmed the instant case, reasoning that under Buffalo Academy (267 NY 242, supra) the restrictive covenant contained in the chain of deeds to Witter’s allegedly benefited parcel was outside the chain of title to the Taggarts’ land and did not constitute binding notice to them (167 AD2d 397).
We granted Witter’s motion for leave to appeal to decide whether the covenant recited in Witter’s chain of title to his *237 purported "dominant” land, which appears nowhere in the direct chain of title to the Taggarts’ purported "servient” land, burdens the Taggarts’ property. We agree with the lower courts that it does not, and therefore affirm the order of the Appellate Division.
The homes of these neighbors are located on lots which have been separately deeded through a series of conveyances, originally severed and conveyed out by a common grantor, Lawrance. Lawrance conveyed one parcel of his land to Witter’s predecessor in title in 1951. The deed contained the restrictive covenant providing that "no docks, buildings, or other structures [or trees or plants] shall be erected [or grown]” on the grantor’s (Lowrance’s) retained servient lands to the south "which shall obstruct or interfere with the outlook or view from the [dominant] premises” over the Winganhauppauge Creek. That deed provided that the covenant expressly ran with the dominant land. William and Susan Witter purchased the dominant parcel in 1963 by deed granting them all the rights of their grantor, which included the restrictive covenant. In 1984, Susan Witter transferred her interest to William Witter alone.
After common grantor Lawrance died, his heirs in 1962 conveyed his retained, allegedly servient, land to the Taggarts’ predecessor in title. Lawrance’s deed made no reference to the restrictive covenant benefiting the Witter property and neither did the heirs’ deed to the Taggarts’ predecessors. The restrictive covenant was also not included or referenced in any of the several subsequent mesne conveyances of that allegedly servient parcel or in the deed ultimately to the Taggarts in 1984. Quite to the contrary, the Taggarts’ deed specifically permitted them to build a dock on their parcel.
Restrictive covenants are also commonly categorized as negative easements. They restrain servient landowners from making otherwise lawful uses of their property (Huggins v Castle Estates, 36 NY2d 427, 430; Trustees of Columbia Coll. v Lynch, 70 NY 440; 4A Warren’s Weed, New York Real Property, Restrictive Covenants, § 1.05, at 12 [4th ed]; 3 Powell, Real Property ¶ 405, at 34-20). However, the law has long favored free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them (Huggins v Castle Estates, supra, at 430; Premium Point Park Assn. v Polar Bar, 306 NY 507, 512; Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY, *238 supra, at 249). Courts will enforce restraints only where their existence has been established with clear and convincing proof by the dominant landowner (Huggins v Castle Estates, supra, at 430; 4A Warren’s Weed, op. cit., Restrictive Covenants, § 2.03, at 17).
The guiding principle for determining the ultimate binding effect of a restrictive covenant is that "[i]n the absence of actual notice before or at the time of * * * purchase or of other exceptional circumstances, an owner of land is only bound by restrictions if they appear in some deed of record in the conveyance to [that owner] or [that owner’s] direct predecessors in title.” (Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY, supra, at 250; see, 4A Warren’s Weed, op. cit., Recording, § 5.06; Restrictive Covenants, § 3.05, at 32-33; 5A Warren’s Weed, op. cit., Title Examination, § 5.18, at 67; 5 Powell, Real Property ¶ 673 [2], at 60-80 — 60-82.) Courts have consistently recognized and applied this principle, which provides reliability and certainty in land ownership and use (see, Doyle v Lazarro, 33 AD2d 142, 144, affd without opn 33 NY2d 981; see also, Andy Assocs. v Bankers Trust Co., 49 NY2d 13, 24; Oak Lane Realty Corp. v Trinity Evangelical Lutheran Church, 7 NY2d 984, affg 7 AD2d 1007; cf., Ammirati v Wire Forms, 76 NYS2d 379, revd 273 App Div 1010, affd without opn 298 NY 697, supra; Marra v Simidian, 79 AD2d 1046; Long Bldg. v Brookmill Corp., 276 App Div 1087).
In Buffalo Academy, we held that a restrictive covenant did not run with the dominant land, but added that even if it did, the servient landowners were not bound because the deed to the servient land did not reflect the covenant. We noted that this rule is “implicit in the acts providing for the recording of conveyances.” (267 NY, supra, at 250.) The recording act (Real Property Law art 9) was enacted to accomplish a twofold purpose: to protect the rights of innocent purchasers who acquire an interest in property without knowledge of prior encumbrances, and to establish a public record which will furnish potential purchasers with actual or at least constructive notice of previous conveyances and encumbrances that might affect their interests and uses (see, Andy Assocs. v Bankers Trust Co., 49 NY2d, supra, at 20).
The recording statutes in a grantor-grantee indexing system charge a purchaser with notice of matters only in the record of the purchased land’s chain of title back to the original grantor (see, Andy Assocs. v Bankers Trust Co., supra, at 24; *239 4A Warren’s Weed, op. cit., Recording, § 1.04, at 10; Aiello v Wood, 76 AD2d 1019; Doyle v Lazarro, 33 AD2d, supra, at 144, affd without opn 33 NY2d 981, supra). Buffalo Academy recognized that a "purchaser is not normally required to search outside the chain of title” (Doyle v Lazarro, supra [emphasis added]; accord, Steinmann v Silverman, 14 NY2d 243, 247), and is not chargeable with constructive notice of conveyances recorded outside of that purchaser’s direct chain of title where, as in Suffolk County (see, Real Property Law § 316-a), the grantor-grantee system of indexing is used (see, Andy Assocs. v Bankers Trust Co., 49 NY2d, supra, at 24; 4A Warren’s Weed, op. cit., Restrictive Covenants, § 3.05, at 33-34; 5A Warren’s Weed, op. cit., Title Examination, § 5.18, at 67-68). This is true even if covenants are included in a deed to another lot conveyed by the same grantor (Doyle v Lazarro, supra, at 144; 5A Warren’s Weed, op. cit., Title Examination, § 5.18, at 67).
To impute legal notice for failing to search each chain of title or "deed out” from a common grantor "would seem to negative the beneficent purposes of the recording acts” and would place too great a burden on prospective purchasers (Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY, supra, at 250). Therefore, purchasers like the Taggarts should not be penalized for failing to search every chain of title branching out from a common grantor’s roots in order to unearth potential restrictive covenants. They are legally bound to search only within their own tree trunk line and are bound by constructive or inquiry notice only of restrictions which appear in deeds or other instruments of conveyance in that primary stem. Property law principles and practice have long established that a deed conveyed by a common grantor to a dominant landowner does not form part of the chain of title to the servient land retained by the common grantor (see, 5A Warren’s Weed, op. cit., Title Examination, § 3.02).
A grantor may effectively extinguish or terminate a covenant when, as here, the grantor conveys retained servient land to a bona fide purchaser who takes title without actual or constructive notice of the covenant because the grantor and dominant owner failed to record the covenant in the servient land’s chain of title (see, 3 Powell, Real Property ¶¶ 421, 424, at 34-269—34-270; Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242, supra; Goldstein v Hunter, 257 NY 401; Tufts v Byrne, 278 App Div 783; see also, Real Property Law § 291). One way the dominant landowner or grantor can *240 prevent this result is by recording in the servient chain the conveyance creating the covenant rights so as to impose notice on subsequent purchasers of the servient land (see, 3 Powell, Real Property ¶ 424, at 34-271 — 34-272).
It goes almost without repeating that definiteness, certainty, alienability and unencumbered use of property are highly desirable objectives of property law. To restrict the Taggarts because of Lawrance’s failure to include the covenant in the deed to his retained servient land, or for the failure by Witter’s predecessors to insist that it be protected and recorded so as to be enforceable against the burdened property, would seriously undermine these paramount values, as well as the recording acts.
Ammirati v Wire Forms (76 NYS2d 379, revd 273 App Div 1010, affd without opn 298 NY 697, supra), on which Witter principally relies, is readily harmonized with Buffalo Academy’s “exceptional circumstances” qualifying clause. Initially, we note that Ammirati (supra) predates several decisions by this Court reaffirming the long-standing principles articulated and soundly applied in Buffalo Academy (supra; see, Andy Assocs. v Bankers Trust Co., 49 NY2d 13, 21, supra; Doyle v Lazarro, 33 AD2d 142, 144, affd without opn 33 NY2d 981, supra; see also, Steinmann v Silverman, 14 NY2d 243, 247, supra). In Ammirati, the common grantor conveyed a landlocked dominant estate. The recorded dominant deed and subsequent deeds in that chain of title recited an affirmative easement for ingress and egress over the grantor’s adjoining retained servient land. The Appellate Division held that the servient land was burdened even though the easement was not included in its chain of title, reasoning that Buffalo Academy was inapplicable because “[i]t deals only with a covenant imposing building restrictions upon the use to which the property may be put.” (Ammirati v Wire Forms, 273 App Div 1010, supra; accord, Marra v Simidian, 79 AD2d 1046, supra; Long Bldg. v Brookmill Corp., 276 App Div 1087, supra.)
Our affirmance only of the result reached in Ammirati (see, People ex rel. Palmer v Travis, 223 NY 150, 156) did not alter. the general principles articulated in Buffalo Academy and is readily supportable in view of the sui generis features in Ammirati (supra), i.e., a landlocked dominant parcel with an affirmative easement by necessity (see, 3 Powell, Real Property ¶ 410, at 34-61 — 34-66; see also, Real Property Law §335-a; *241 Matter of Pratt v Allen, 116 Misc 2d 244). The circumstances constituting the "necessity” ordinarily also constitute inquiry notice of the easement, which limits the common grantor servient owner’s ability to extinguish the easement. In this case, the Taggarts did not have inquiry notice of a covenant in the deed to Witter’s fully accessible parcel located across the canal.
Although the context of this restrictive covenant case parallels the situation of Buffalo Academy, we note further that the general rule of that case does not turn on the distinction between an affirmative or negative easement, and to the extent that the Appellate Division memorandum in Ammirati may be read inconsistently with Buffalo Academy in that respect, we add that it should not be followed.
We emphasize that our affirmance in Ammirati does not, as Witter would have us now hold, stand for the proposition that where a deed from a common grantor separates parcels into dominant and servient properties, the deed conveying the dominant parcel is considered part of the chain of title of the retained servient land. Rather, we hold that, consistent with long-standing precedents and property principles, the Taggarts did not have actual or constructive notice of this restrictive covenant because it was never included in their deed or direct chain of title. There being no other imputable constructive or inquiry notice, they are not bound by that covenant.
We have examined the other issues raised by the parties and determine they are without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs.