80P2L LLC v U.S. Bank Trust, N.A. (2021 NY Slip Op 03275)





80P2L LLC v U.S. Bank Trust, N.A.


2021 NY Slip Op 03275


Decided on May 25, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 25, 2021

Before: Renwick, J.P., Kern, Singh, Shulman, JJ. 


Index No. 153849/15 Appeal No. 13174 Case No. 2020-01351 

[*1]80P2L LLC, Plaintiff-Respondent,
v
U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, Defendant-Appellant.


Law Office of Rajan Patel, Nanuet (Rajan Patel of counsel), for appellant.
Rosenberg Fortuna & Laitman LLP, Garden City (Anthony R. Filosa of counsel), for respondent.



Order, Supreme Court, New York County (Kathryn E. Freed, J.), entered on or about September 4, 2019, which granted plaintiff's motion for reargument, and upon reargument, granted plaintiff's motion for summary judgment, declared that plaintiff had priority over defendant in the chain of title for certain real property, and struck the mortgage from the record, reversed, on the law, with costs, summary judgment denied, and the declaration and directive vacated. Defendant's request that we search the record and, upon review, award it summary judgment, is granted, plaintiff's amended complaint is dismissed, the notice of pendency is vacated, and the interest claimed in the real property known as 80 Park Avenue, Unit 2L, New York, NY 10016 is declared subject and subordinate to defendant's mortgage recorded in the Office of the New York City Register on April 18, 2005 as City Register File Number 2005000221020. The Clerk is directed to enter judgment accordingly.
The parties do not dispute that the mortgage, as reflected in the records of the Office of the New York City Register, did not bear a notary stamp or any indication that the mortgage was properly acknowledged as required by Real Property Law §§ 291, 298, 309-a(1), and 333(2). However, the bank proffered evidence establishing that the mortgage was properly acknowledged when submitted for recording. This evidence included the original inked mortgage containing the notary public's information; an affidavit from the notary who affixed her notary stamp at the time; an affidavit from the title company that submitted the mortgage for recording, and an expert affidavit and report by a forensic document examiner in which he concluded that the Register's scanner could have caused the notary stamp to disappear from the imaged mortgage. Plaintiff has failed to show by clear and convincing evidence that the acknowledgment was defective (see Genger v Arie Genger 1995 Life Ins. Trust, 84 AD3d 471, 472 [1st Dept 2011]). Thus, the bank demonstrated that the mortgage was "entitled to be recorded . . . and is considered recorded from the time of [ ] delivery [to the Office of the New York City Register]" (Real Property Law § 317).
Given that the mortgage was duly acknowledged, delivered and actually recorded, plaintiff is deemed to have constructive notice of it (see Bank of New York v Resles, 78 AD3d 469, 471 [1st Dept 2010]). Thus, plaintiff's interest in the premises is subject and subordinate to defendant's mortgage.
All concur except Renwick, J. who concurs
in a separate memorandum as follows:




RENWICK, J.P. (Concurring)


I write separately because although I reach the same result as the majority, I do so on a different ground that, I believe, more appropriately resolves the essence of plaintiff's complaint seeking to invalidate a first-mortgage lien. Plaintiff acquired the subject condominium unit as the highest bidder at a judicial auction to foreclose on a common charge lien. In the ordinary [*2]case, a successful bidder's interest in a condominium unit is presumably subordinate to a first-mortgage lien from a loan used to finance the purchase of the property.[FN1] In this case, however, plaintiff argues, its rights as a successful bidder are superior to the first-mortgage lien, pursuant to Real Property Law (RPL) 291, the recording statute that protects a good faith purchaser for value from an unrecorded interest in property, provided that the purchaser's interest is first to be duly recorded (see RPL 290 et seq.).[FN2] Supreme Court granted plaintiff summary judgment declaring that plaintiff had priority over the first mortgage in the chain of title and vacated and expunged defendant's mortgage from the public record. In so doing, the court reasoned that RPL 291 requires an instrument conveying real property be properly acknowledged in order to be recorded.[FN3] This was not done here, since the scanned image of the recorded mortgage at the New York County registry lacked a notary stamp. On appeal, the majority reverses and searches the record to grant defendant summary judgment. The majority thus declares that plaintiff's interest in the subject condominium unit is subordinate to defendant's first-mortgage lien, but finds that defendant submitted conclusive proof establishing that the subject mortgage was properly acknowledged before a notary public and thus properly recorded. In my view, however the evidence on the record raises triable issues of fact as to whether the first mortgage was properly recorded. Nevertheless, irrespective of whether or not the mortgage was duly recorded, plaintiff was still not entitled to the protections of RPL 291 because the circumstances surrounding plaintiff's acquisition of the condominium unit at the judicial auction all tend to negate any possibility that plaintiff was an innocent purchaser, a prerequisite to obtaining RPL 291 protection. Therefore, I concur in result only.
Factual and Procedural Background
A recitation of the facts and circumstances of the condominium unit's acquisition is helpful to fully understand plaintiff's action. Michelle Hipshman Zar, the original owner of the subject condominium unit, of a building in Manhattan's Murray Hill neighborhood, took title to the property by deed dated March 8, 2005 and recorded in the office of the New York County Registry on April 18, 2005. Zar financed her purchase of the condominium unit by borrowing $361,000.00 from Washington Mutual Bank, F.A. (Wamu). The Wamu loan was secured by a mortgage between Zar, as borrower, and Wamu, as lender, encumbering the condominium unit. Zar closed on her purchase on March 8, 2005, at which time she also executed the promissory note and mortgage. Five weeks later, on April 18, 2005, the mortgage was recorded in the New York County Registry.
The signature page of the scanned image of the recorded mortgage at the New York County Registry (ACRIS System) showed the purported signature of the purchaser[*3], below this was the attestation, on which the county, date, and name of the purchaser were handwritten. There was also a signature line for the person acknowledging the buyer's signature. On the signature line for the acknowledger was a handwritten scrawl, but there was no evidence whatsoever of a notary stamp, which would include the name of the notary, where he/she was commissioned, the expiration date, and his/her commission number; nor was there any indication on the signature page that the person acknowledging the signature was a notary.
In 2008, JP Morgan Chase (Chase) acquired most of Wamu's assets and liabilities, including the subject mortgage, from the Federal Deposit Insurance Corporation, as Wamu's receiver, pursuant to a Purchase and Assumption Agreement. In late 2010 or early 2011, Zar began defaulting on her common charge with the Condominium Association of 80 Park Avenue, as well as her mortgage obligations with Chase. In September 2011, the Condominium Association filed a common charges lien against Zar's condominium unit. In February 2012, Chase commenced a foreclosure action on its mortgage lien, attaching to the complaint a copy of the mortgage that, like the scanned copy of the mortgage at the City Registry, lacked a notary stamp. That is, on the signature line for the acknowledger was a handwritten scrawl, but there was no evidence whatsoever of a notary stamp. Chase added the Condominium Association as a defendant in the mortgage foreclosure action. The Condominium Association answered by asserting the defense, among others, that its common charges lien had priority over Chase's mortgage lien. However, on August 8, 2014, pursuant to a motion granted on default, Supreme Court ordered that the Condominium Association's answer be stricken.
Meanwhile, on January 24, 2014, the Condominium Association commenced its own action seeking to foreclose on its common charge lien against the condominium unit. Neither Chase nor Wamu was named as a defendant in the action. On September 5, 2014, the Condominium Association obtained an Amended Judgment of Foreclosure and Sale, which ordered that the condominium unit be sold at a public auction under the direction of an appointed referee. The public auction took place on December 10, 2014, at which time the referee offered the subject condominium unit for sale to the highest bidder, plaintiff, for the sum of $53,000. (Ten years earlier, the property had been purchased by Zar for $461,000).
Both the terms of the sale and the Amended Judgment of Foreclosure and Sale state that the property would be sold subject to "any prior liens of record." Prior to bidding on Zar's condominium unit, plaintiff had hired Atlantis National Services (Atlantis) to issue a title report on the property, which was completed on December 5, 2014. The title report revealed the Chase Mortgage in Schedule B, Item 2 and in an attached mortgage schedule. It also revealed [*4]a lis pendens associated with the Chase Mortgage foreclosure action, in Schedule B, Item 25. The title report indicated in Schedule B that the Chase Mortgage and the lis pendens would be excepted from coverage in any title insurance policy unless it was disposed to Atlantis' satisfaction prior to closing. Consistent with the title report, a title policy issued by Atlantis referred to a Schedule B, which identified items which would not be covered under the policy, and it included the Chase Mortgage and the lis pendens.
On or about April 17, 2015, plaintiff commenced this action to cancel and discharge the Chase mortgage. (This was prior to Chase procuring a judgment in its mortgage foreclosure action, which took place later, on May 9, 2016. By that time, Chase had already assigned its interest in the mortgage to defendant U.S. Bank Trust on December 31, 2014).[FN4] In its subsequent amended complaint, plaintiff clarifies that it is pursuing causes of action to quiet title pursuant to RPAPL article 15, and for a judgment declaring that plaintiff had priority over defendant in the chain of title for the condominium unit and striking from the record the mortgage on the property as null and void. Plaintiff's claims in the amended complaint boil down to a single legal theory of recovery, namely that it has priority over defendant's mortgage pursuant to RPL 291, because the subject mortgage was never duly recorded. Specifically, the Amended Complaint states: "Pursuant to RPL 291 every conveyance in non-recordable form is void against any person who subsequently purchases [the property]." Plaintiff explains that the mortgage was in unrecordable form when recorded because the borrower did not acknowledge his signature before a notary public, as evidenced by the fact that the scanned image of the recorded mortgage lacked a notary stamp. In other words, it was not properly witnessed or acknowledged and did not, therefore, comply with RPL 243 and 291, as the certificate of acknowledgement of the mortgage was not made by one authorized to take acknowledgement of a conveyance of real property under RPL 298. Thus, plaintiff alleges that, without a valid acknowledgement at the time of the alleged execution, there was no proof that the execution of the mortgage was witnessed and, thus, the mortgage was not in recordable form.
In November 2017, both parties moved for summary judgment. Defendant sought dismissal of plaintiff's complaint primarily arguing that it proved its possession of the ink original of the mortgage submitted for recording that contained the required information through a legible notary stamp. Defendant alternatively argued that plaintiff's complaint was devoid of merit because plaintiff was not a bona fide purchaser for value entitled to rely on the recording statutes as it had actual or constructive notice of the bank's mortgage on the property.
Defendant submitted several affidavits to support its argument that it possessed the original mortgage it submitted for recording, and that the mortgage contained the required information through a legible notary stamp. Jasmine Hahn, a Lex Terrae title closer, averred that having reviewed Lex Terrae's records, and based on her personal knowledge, and custom and practice, her signature and notary stamp were affixed to the mortgage at the 2005 closing, before it was submitted to the Register to be recorded. Hahn also averred that she had not placed her notary stamp on the mortgage after the fact because, "based on my personal knowledge, my custom and practice, and my review of Lex's records, the Mortgage Lex submitted for recording already bore my notary stamp." Trey Conner, an employee of Caliber Home Loans, the bank's attorney in fact, averred that he reviewed the mortgage file and that it contained only one ink original of the mortgage which he had forwarded to counsel, that there was no additional ink original, and that there were no records indicating that there were any deficiencies in the original mortgage. The copy of the ink original attached to the Conner affidavit showed a faint notary stamp. Joseph G. Devine, Jr., authorized signer of Chase and familiar with its records, attached a copy of the mortgage which showed a notary stamp, albeit somewhat illegible. Richard M. Icklan, president of Lex Terrae, attested that Lex Terrae kept exact copies of any documents sent out for recording, and attached a copy of the mortgage which contained a notary stamp on the signature page.
Finally, defendant submitted an expert report from Albert D. Osborn, a forensic document examiner, who compared the hard copy of the original mortgage containing the ink notary stamp with the scanned mortgage recorded at the City Registry (ACRIS), lacking the notary stamp. According to the forensic document examiner, "the page bearing the notarization signature with the original document . . . is a proportional match with the corresponding page" on the scanned mortgage at the City Registry (ACRIS System). The forensic document examiner explained that "this match includes, not only the appearance of the notarization, but also the other signatures and writing appearing at the page." However, the forensic document examiner acknowledged that he did "not have the ability, based on the evidence appearing on the submitted material, to confirm the [notary] stamp presence when [the purported mortgage] was reproduced into the ACRIS System." In that regard, the forensic document examiner opined that the stamp "might" not have been reproduced into the ACRIS System because the faint stamp on the original could disappear when scanned.
For its part, plaintiff reiterated its legal theory of the case that the mortgage as recorded was not "duly acknowledged or proved" as required by RPL 291, 298,[FN5] and 309-a(1)[FN6] . Accordingly, the mortgage was void as against anyone who subsequently purchased or acquired the property pursuant to RPL 291. Because the mortgage, [*5]certified by the Register as a true and correct copy of the original document, contained a defective acknowledgement (i.e., no notary stamp), it was subordinate to plaintiff's interest.
On or about December 20, 2018, Supreme Court denied both motions. In so doing, the court reasoned that while plaintiff sustained its prima facie burden in showing that the mortgage was not properly acknowledged as required by RPL 309-a(1), defendant raised an issue of fact as to whether the mortgage, when originally executed, contained a notary stamp and was properly acknowledged. On reargument, however, the motion court granted plaintiff summary judgment, declaring that it had priority over defendant in the chain of title, and thus the court vacated and expunged defendant's mortgage from the public record. In so doing, the court stated that RPL 291 required that an instrument conveying real property could not be recorded unless it was acknowledged, and that under RPL 318,[FN7] the acknowledgement and authenticating certificate must be included with the recorded instrument. Discussion
While the majority and I reach the same result for different reasons, we both agree that the ultimate dispositive issue is whether RPL 291 provides plaintiff protection as a successful bidder, in a judicial auction to foreclose on a common charge lien, over a first-mortgage lien.[FN8] The New York Recording Act, more commonly referred to as the "race-notice" statute, (RPL 290 et seq.) protects a good faith purchaser for value from a prior unrecorded interest in real property provided, inter alia, that the subsequent purchaser's interest is the first to be duly recorded (see RPL 291; Witter v Taggart, 78 NY2d 234 [1991]; 2386 Creston Ave. Realty, LLC v M-P-M Management Corp., 58 AD3d 158, 160 [1st Dept 2008], lv denied, 11 NY3d 716 [2009]). It is intended to protect innocent purchasers who acquire an interest in property without prior knowledge of prior encumbrances, and to establish a public record which would furnish potential purchasers with notice, or at least "constructive notice" of previous conveyances and encumbrances which may affect their interest and uses (see e.g. Witter at 239; see also Dale A. Whitman, Ann M. Burkhart, R. Wilson Freyermuth & Troy A. Rule, Property [hereinafter, Whitman] § 11.10, at 774 [4th ed 2019] [bona fide purchaser status "has two elements: paying value and taking in good faith with no notice of the prior conveyance"]). Thus, it has long been the rule that a purchaser with pre-purchase notice, actual or constructive, of an unrecorded instrument or encumbrance is not a good faith purchaser for value and cannot avail himself or herself of the benefits of the recording statutes (Andy Assoc. v Bankers Trust Co., 49 NY2d 13, 17 [1979] ).
In this case, as fully detailed above, this much is undisputed: defendant's predecessors in interest held a first-mortgage lien on the subject condominium unit pursuant to a loan extended to the prior [*6]owner of the Unit, and that mortgage loan was executed prior to plaintiff's acquisition of the property. Plaintiff acquired the property in a judicial auction to foreclose on a common charge lien. Prior to the Condominium Association's commencement of its foreclosure action, Chase had instituted a foreclosure action on its first-mortgage lien. The Condominium Association answered Chase's complaint and asserted the defense, among others, that its common charge lien had priority over the first-mortgage lien. The Condominium Association defaulted in that action. However, the Condominium Association preserved its common charge lien by procuring its own judgment before Chase procured a judgment on its first-mortgage lien. Still, the Condominium Association did not join Chase or Wamu in its foreclosure action, presumably because they were not indispensable parties, as their rights under the first-mortgage lien were not affected, as a common charge lien is usually subordinate to a first-mortgage lien. Indeed, both the judgment of foreclosure and sale, which allowed the Condominium Association to dispose of the property, and the terms of the sale at the judicial auction made clear that the property would be sold subject to "any prior liens of record." Finally, pursuant to its effort to acquire the property at the judicial auction, plaintiff did its own due diligence by procuring a title report and title insurance, both of which clearly state that the Chase Mortgage and lis pendens were outstanding and would be excepted from title insurance coverage in any title insurance policy unless disposed of prior to closing.
These circumstances surrounding plaintiff's purchase of the condominium unit all tend to negate any possibility that plaintiff had no knowledge or notice of the outstanding mortgage on the property (see Bank of New York Mellon v Bentley Eyeglasses, 190 AD3d 450 [1st Dept 2021]; Akasa Holdings, LLC v 214 Lafayette House, LLC, 177 AD3d 103, 120—121 [1stDept 2019], quoting Anderson v Blood, 152 NY 285, 293 [1897]; 2386 Creston Ave. Realty, LLC, 58 AD3d at 163. In fact, at no time during these proceedings, neither in the complaint nor during the motion practice below, nor in its respondent's brief before this Court, has plaintiff alleged lack of actual knowledge or notice of defendant's mortgage. Instead, in the respondent's brief before this Court plaintiff clarifies that it is indeed a bona fide purchaser for value protected by RPL 291 because it had no obligation to inquire once defendant's predecessor submitted a mortgage for recording that was defective, i.e., not in recordable form. In other words, plaintiff argues that the failure to properly record the mortgage automatically renders the mortgage void against any subsequent purchasers for value pursuant to RPL §291.
Contrary to plaintiff's suggestion, an alleged failure to properly record a mortgage does not affect its validity.[FN9] Under Real Property Law, the term "conveyance" includes every [*7]written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned, or by which the title to any real property may be affected (see RPL 290(3) compare with RPL 240(2); GOL § 5-101(1). Recording is not required in order to transfer title to real property (see Polsky v 145 Hudson St. Assoc., L.P., 139 AD3d 434 [1st Dept 2016]; Matter of Humann, 136 AD3d 1036, 1037 [2d Dept 2016]). Rather, an interest in property vests upon the execution and delivery of the instrument of conveyance (see RPL 244; Matter of Humann, 136 AD3d at 1036), and that the mortgage may not have been duly recorded —or not recorded at all—does not affect the validity of the conveyance (see Crossland Sav. v Patton, 182 AD2d 496, 496 [1st Dept 1992], lv denied 80 NY2d 775 [1992]; see also Strough v Wilder, 119 NY 530 [1890] [a conveyance of realty is effective to pass title as between the parties thereto, even though the deed be unacknowledged or improperly acknowledged]; Wood v Chapin, 13 NY 509 [1856] [same]). Thus, where there is no dispute, like here, that the mortgagor signed the mortgage instrument, a party cannot affirmatively attack or defend a mortgage foreclosure action brought by the mortgagee on the sole ground that the instrument had not been acknowledged and thus not properly recorded.
Here, plaintiff's knowledge of defendant's mortgage lien renders any recording requirement irrelevant. While it is true, generally speaking, that prudence would strongly suggest that a mortgagee record his/her interest in property there is no requirement to do so. Of course, if a party does record his/her interest, Real Property Law 291 protections would be triggered. This "race-notice" recording statute was enacted to protect rights of innocent purchasers who acquire an interest in property without knowledge of prior encumbrances, and to establish public record which will furnish potential purchasers with actual or at least constructive notice of previous conveyances and encumbrances that might affect their interests and use (Witter v Taggart, 78 NY2d at 239). Under RPL 291, an unrecorded conveyance is void only against a subsequent purchaser in good faith who has paid valuable consideration and has no knowledge or notice of the prior unrecorded conveyance.
For the foregoing reasons, the unavoidable legal conclusion on this record is that plaintiff was not entitled to RPL 291's statutory protection as a successful bidder at a judicial action to foreclose on a common charge lien; plaintiff cannot maintain the status of an innocent purchaser, irrespective of whether or not defendant's mortgage was duly recorded. In light of this conclusion, it is not necessary for this Court to address the question of whether defendant has conclusively established proper recordation despite the undisputed fact that the scanned image of the recorded mortgage at the New York County Registry lacks a notary stamp. Ordinarily, an appellate court should limit [*8]itself to deciding only what is necessary to disposition of the immediate case, without being constrained to a litigants' distorted view of the case. Thus, the majority should not exercise discretion to search the record on whether or not defendant's mortgage was duly recorded, a close factual and credibility issue. Nor should it ignore the clear record evidence that plaintiff was aware of the Chase mortgage, including from its own title company's report prepared 5 days before the auction of the Zar condo. This evidence underscores that plaintiff's theory of protection under RPL 291 does not conform with the law and the undisputed facts of this case, irrespective of whether or not defendant's mortgage was duly recorded. Plaintiff's knowledge of defendant's mortgage lien renders any recording requirement irrelevant, and an unnecessary basis on which to search the record as it raises factual and credibility issues which are solely within the jury's province to resolve.
Despite the obvious basis for dismissal of plaintiff's action, the
majority chooses to dismiss the action on factual issues that are peculiarly within the province of the jury to resolve where issues of credibility are involved. Furthermore, the majority's factual findings are not in accord with the record. Contrary to the majority's conclusions, defendant did not present sufficient evidence to conclusively establish that its mortgage was properly recorded with the required notary stamp. Indeed, the majority does not dispute the fact that the scanned image of the recorded mortgage at the New York County Registry lacks a notary stamp and that such deficiency would render a mortgage unrecordable as lacking a proper acknowledgement. But the majority finds this fact insufficient to raise a triable issue of fact on the issue of proper recordation because defendant "proffered evidence establishing that the mortgage was properly acknowledged when submitted for recording."
However, contrary to the majority's conclusions, defendant presented no evidence as to the actual events of recordation, which took place five weeks after the closing, on April 18, 2005. In fact, defendant presented no affidavit from the person who actually presented the mortgage that allegedly contained the necessary notary stamp for recordation on April 18, 2005. Nor did the witnesses, who attested for the defendant, express any personal knowledge as to the actual events of recordation on April 18, 2005. The two witnesses who defendant presented as having knowledge of the mortgage that was allegedly presented for recordation were Jasmine Hahn, who worked with Lex Terrae as title closer and Richard M. Icklan, the president of Lex Terrae. Hahn averred that having reviewed Lex Terrae's records and based on her personal knowledge, and custom and practice, her signature and notary stamp were affixed to the mortgage at the 2005 closing, before it was submitted to the Register to be recorded. Hahn also averred that she [*9]had not placed her notary stamp on the mortgage after the fact because, "based on my personal knowledge, my custom and practice, and my review of Lex's records, the mortgage Lex submitted for recording already bore my notary stamp." Because Hahn was only present at the closing, where she notarized the mortgage signed by the mortgagor, she could only assume that the copy she notarized 12 years earlier was the one used for recording Likewise, she expressed no personal knowledge about the events of recording which took place five weeks after the closing. Similarly, while Richard M. Icklan, attested that Lex Terrae kept exact copies of any documents sent out for recording, and attached a copy of the mortgage which contained a notary stamp on the signature page, he also assumed that the copy that was notarized was the one likely used for recording, as he expressed no personal knowledge about the events of recording.
To be sure, from these witnesses' testimony, it could be reasonably inferred that the copy of the mortgage that was notarized at the closing was the one intended to be submitted and thus was the one presumably submitted for recording. However, that was not the only reasonable inference available on this record. The record also raised a reasonable inference that a copy of the mortgage with no notary stamp was the one presented for recording. Indeed, along with the fact that the scanned image of the recorded mortgage at the County Registry lacks a notary stamp, the record establishes that defendant's predecessor, Chase, appended copies of the visually uncertified mortgage to its complaint in the foreclosure action.[FN10] Thus, it is entirely likely that this was the copy that was actually submitted for recordation on April 18, 2015.
Nor is the ambiguity of the evidence on the issue of proper recordation eliminated by the report of the forensic document examiner. To be sure, the forensic document examiner opined that "the page bearing the notarization signature with the original document . . . is a proportional match with the corresponding page" on the scanned mortgage at the City Registry (ACRIS System). However, that there is a copy of a notarized version of the mortgage does not establish that a notarized version was brought to the City Register for scanning. Similarly, that the signatures on the copy of the mortgage, with a notary stamp, match the signatures on the scanned mortgage, without a notary stamp, does not conclusively establish that the notary stamp was on the copy of the mortgage when presented at the City Register for recording and scanning. In fact, the forensic document examiner himself acknowledged that he did "not have the ability, based on the evidence appearing on the submitted material, to confirm the [notary] stamp presence when [the purportedly notarized] mortgage was reproduced into the ACRIS System." Instead, the forensic document examiner opined, without any degree of certainty, that the stamp "might" not have [*10]been reproduced into the ACRIS System because the faint stamp on the original could disappear when scanned (see Matott v Ward, 48 NY2d 455, 461 [1979]). Thus, contrary to the majority's conclusions, the forensic document examiner's speculation did not eliminate the possibility that the mortgage copy submitted for recordation on April 18, 2015 lacked a notary stamp.
Significantly, for some unexplained reason, the forensic document examiner never compared the copy of the mortgage defendant appended to its complaint in its mortgage foreclosure action, which lacked a notary stamp, with the scanned copy at the City Registry to determine whether there was a "proportional match" of signatures between these two versions of the mortgage, which both lack a notary stamp. Thus, the forensic document examiner never eliminated the possibility that the copy of the mortgage defendant appended to its complaint in its mortgage foreclosure action and which lacked a notary stamp was the version submitted for recordation.
Under these circumstances, granting a motion for summary judgment is not warranted on the issue of recordation, where conflicting inferences may be drawn from the record. Indeed, it is defendant that is asking this Court to search the record and grant it summary judgment, since defendant never appealed the denial of its motion for summary judgment. Under this procedural posture, it is defendant's burden to show that there is no genuine issue of fact as to the material issue of whether the mortgage was duly recorded (Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]). To make this assessment, this Court must construe the evidence in the light most favorable to plaintiff—the non-movant — on the issue of proper recordation, draw all inferences in plaintiff's favor, and resolve all ambiguities in plaintiff's favor (see Matter of New York City Asbestos Litig., 33 NY3d 20, 25 [2019]; Vega v Restani Constr. Corp., 18 NY3d 499, 504 [2012] ). Thus, because material facts are in dispute and different inferences may reasonably be drawn from the facts themselves even if undisputed, this case was not ripe for summary judgment disposition on the issue of proper recordation (Alvarez at 324; see e.g. Vega at 503).
To exacerbate matters, the majority applies an incorrect standard of proof to the issue of proper recordation. The majority argues that plaintiff did not meet its burden of proof under the standard of clear and convincing evidence. However, the standard of clear and convincing evidence applies when a party attacks the genuineness of a conveyance instrument such as a deed or a mortgage (see e.g. Bryant v Bryant, 58 AD3d 496 [1st Dept 2009]), which is not the situation here. In that situation, the instrument's genuineness may be established by a notary public's acknowledgement executed contemporaneously to a party's signature on the instrument of conveyance (id.). The acknowledgement [*11]creates the presumption that the instrument was validly executed, which can be overcome by clear and convincing evidence (id.; see also Genger v Arie Genger 1995 Life Ins. Trust, 84 AD3d 471, 471—472 [1st Dept 2011]). No such presumption and standard has ever been applied when a party contends that an instrument is not duly recorded. In fact, unlike the notary public's acknowledgement and party's signature, which are supposed to be contemporaneous events, execution of the mortgage and the mortgage's recordation are separate and distinct events that occur at different times and locations. Thus, plaintiff's allegations that defendant's mortgage was not duly recorded was improperly subjected, by the majority, to an enhanced evidentiary showing of clear and convincing evidence, rather than just to equivocal evidence, as normally deemed sufficient to withstand a motion for summary judgment dismissing a complaint (see Alvarez, 68 NY2d at 34; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
For the foregoing reasons, I respectfully concur in result only. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 25, 2021



Footnotes

Footnote 1: Real Property Law § 339—z states that a "board of managers, on behalf of the unit owners, shall have a lien on each unit for the unpaid common charges thereof, together with interest thereon, prior to all other liens except only ... (ii) all sums unpaid on a first mortgage of record."

Footnote 2: Under RPL 291, a conveyance of real property within the state, on being duly acknowledged or proved, may be recorded in the office of the clerk of the county in which such property is located. A mortgage is a conveyance within the meaning of such section by virtue of the definition of "conveyance" found in RPL 290(3).

Footnote 3: A proper acknowledgment requires both an oral declaration by the signer of the document made before an authorized officer and a written certificate of acknowledgment, attached to the agreement, endorsed by an authorized public officer attesting to the oral declaration (see RPL 306; Louise Matisoff v Stephen Dobi, 90 NY2d 127, 137—138 [1997])

Footnote 4: By stipulation dated September 15, 2016, U.S. Bank Trust was substituted in the caption in place of Chase and WaMu.

Footnote 5: RPL 298. Acknowledgments and proofs within the state:
"The acknowledgment or proof, within this state, of a conveyance of real property situate in this state may be made: 1. At any place within the state, before (a) a justice of the supreme court; (b) an official examiner of title; (c) an official referee; or (d) a notary public."

Footnote 6: RPL 309-a (1) provides
"1. The certificate of an acknowledgment, within this state, of a conveyance or other instrument in respect to real property situate in this state, by a person, must conform substantially with the following form, the blanks being properly filled:
State of New York)
) ss.:
County of ..........)
On the ........... day of ................ in the year ....... before me, the undersigned, personally appeared ........., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument."

Footnote 7: RPL 318 states: "The certificate of the acknowledgement of the execution of an instrument, and the certificate authenticating the signature or seal of the officer so certifying must be recorded together with the instrument so acknowledged or proved; otherwise neither the record of the instrument nor a transcript thereof can be read in evidence."

Footnote 8: We also agree that the lack of a notary stamp renders the mortgage unrecordable as lacking a proper acknowledgement. Likewise, we reject defendant's argument with respect to RPL 317, that the existence of the mortgage, even without the notary stamp, is sufficient for recording and to give notice pursuant to RPL 291.

Footnote 9: In fact, RPL section 291 provides that "a conveyance of real property on being duly acknowledged or proved may be recorded in the office of the clerk of the county where such real property is situated .

Footnote 10: In addition, while defendant has proffered evidence that the mortgage in its possession contains a notary stamp, defendant itself notes that the stamp is faint and required substantial darkening to show that it was even on the document.