Bank of Am., N.A. v Lynch (2025 NY Slip Op 50703(U))

[*1]

Bank of Am., N.A. v Lynch

2025 NY Slip Op 50703(U)

Decided on May 2, 2025

Supreme Court, Suffolk County

Hackeling, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 2, 2025
Supreme Court, Suffolk County

Bank of America, N.A., Plaintiff,

against
Maura Lynch a/k/a MAURA E. LYNCH; MARTIN LOPEZ, HARDY PLUMBING HEATING & AIR CONDITIONING INC., MARCELO M. SUAREZ OROZCO, BANK OF AMERICA, N.S. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, and HSBC DEVELOPMENT 12345 LLC, Defendants.

Index No. 026461/2012

Maura Lynch
Defendant pro se
Alman Schochet LLP
Attorney for Successors-in-Interest to HSBC Development 12345 LLC
250 Broadway, 6th Floor
New York, New York 10007
McCabe, Weisberg & Conway, LLC
Attorney for plaintiff
10 Midland Avenue, Suite 205
Port Chester, New York 10573

C. Stephen Hackeling, J.

Upon the following papers read on this e-filed motion rejecting referee's report of sale: Notice of Motion/Order to Show Cause and supporting papers by defendant, filed January 3, 2025 ; Notice of Cross-Motion and supporting papers; Answering Affidavits and supporting papers dated January 27, 2025 ; Replying Affidavits and supporting papers _____; Other; it is
ORDERED, that the portion of defendant's motion (mot. seq. no. 020) objecting to the Referee's Report of Sale ("Report of Sale") is granted in part; and it is further
ORDERED, that Cooper J. Macco, Esq. (the "Referee"), 2950 Express Drive South, Suite 109, Islandia, New York 11749 (Telephone No.: 631-549-7900) is appointed referee to [*2]ascertain and report whether, and in what priority, there exists any other person or entity who has a lien on surplus money; and it is further
ORDERED, that the Referee shall promptly file a notice of appearance in this case; and it is further
ORDERED, that the Referee shall promptly order, obtain, and review a judgment and lien search to ascertain and prepare a report regarding the amount due any other person who has a lien on such surplus moneys and the priority of any such liens (RPAPL § 1361(2)); and it is further
ORDERED, that said Referee shall file and serve his motion, on notice to defendant and any judgment creditor, claimant, or other lienor, to confirm his Referee's Final Report; and it is further
ORDERED, that the Referee shall be paid a fee of $2,500.00 for his services in this matter from the surplus money plus reimbursement for the fee for obtaining a judgment and lien search; and it is further
ORDERED that if the referee's fees exceed $2,500.00 for his services in this matter, then he may file an application to the Court for an award of further fees upon a showing of good cause.
D I S C U S S I O N
At the onset, it must be reiterated that the judgment of foreclosure and sale, dated January 8, 2019 (hereafter the "Judgment"), is a final and non-appealable order of this Court. Defendant Lynch's continued insistence at every appearance before this Court that it must review, undo, re-evaluate, question, and recalculate the Judgment is denied. "Under the doctrine of res judicata, a final adjudication of a claim on the merits precludes re-litigation of that claim and all claims arising out of the same transaction or series of transactions by a party or those in privity with a party." Wheeler v. Trifera, 209 AD3d 862 (2d Dept. 2022). "A judgment of foreclosure and sale is final as to all questions at issue between the parties and concludes all matters of defense which were or could have been litigated in the foreclosure action. Id. at 864. "A judgment of default which has not been vacated is conclusive for res judicata purposes, and encompasses the issues which were raised or could have been raised in the prior action" (id.). To the extent that the Terms of Sale conflict with the judgment of foreclosure and sale, the Terms of Sale are void. Renaissance Complex Redevelopment Corp. v. Renaissance Associates, 255 A.D.274 (1st Dept. 1998). 
Here, the Judgment encompassed all issues that were raised or could have been raised in this action (see id.). The fact that defendant Maura Lynch defaulted in the foreclosure action does not change this conclusion, as a judgment entered on default "is conclusive for res judicata purposes" (id.). Indeed, the Judgment itself states that the Court "independently evaluated the amounts presently due under the note." Defendant Lynch's unrelenting argument to review the calculations in the Judgment is completely unsupported and was partially the basis for this Court to enter an order, on its own motion, finding that she is a vexatious litigant. [See NYSCEF Doc. No. 248]. Lynch's argument to undo the Judgment must be put to rest. 
The only remaining issue is whether there is a surplus or deficiency in this case.
With permission to file, Defendant Lynch moves by order to show cause to reject the referee's report of sale filed December 16, 2024 [NYSCEF Doc. No. 263]. This Court signed the [*3]order to show cause and stated that "at the hearing on January 29, 2025, the parties should be prepared to discuss deadlines for filing trial documents in support of — and in opposition to — the referee's report of sale, as well as scheduling a limited issue trial on the amount owed to plaintiff under the judgment of foreclosure and sale." On January 27, 2025, the attorneys for non-parties Barry E. Silver and Francine Silver filed opposition. [NYSCEF Doc. No. 270].
At the hearing held on January 29, 2025, the parties requested an adjournment and the Court stated "I would be happy to adjourn this, but I want you all to take this flowchart and get us the answer to the questions . . . — so you'll have a rough idea of whether we are even close to having a surplus . . . and it is all premised on everything has to come out of the judgment of foreclosure and sale."[FN1]
The parties indicated that they understood the directive, and each were given a flowchart that the Court would use to calculate whether there is a surplus.[FN2]

The matter was adjourned to March 5, 2025, and oral argument was held. None of the parties offered any evidence at the hearing disputing the Court's calculation(s) contained on the flowchart.
The first question on the flowchart is taken directly from the judgment of foreclosure and sale and states as follows: "[a]nd added to this amount such taxes and insurance costs as have been paid by Plaintiff for the maintenance of the property since March 6, 2014 to the sale." [NYSCEF Doc. No. 20 page 3]. The foreclosure sale in this case was held on August 16, 2022. At the hearing, plaintiff admitted that it did not have the figures for those amounts it advanced for taxes and insurance and therefore the Court disallows such advances. (See Exhibit A flowchart at line 5).
On the issue of advances for taxes, defendant argues in support of her motion that she paid $13,149.90 for real estate taxes and insurance payments totaling $24,316.29. Defendant however failed to provide evidence of when these advances were made and proof of the payments. Accordingly, the Court disallows same.
"[A] mortgagee is entitled to a deficiency judgment equal to the amount of the indebtedness, less the sale price of the property or the fair market value, whichever is higher" (Marine Midland Bank v. Harrigan Enters., 118 AD2d 1035, 1037 3d Dept. 2014). Generally, a court must determine "the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction" (RPAPL 1371[2]; see also, Farmers Nat. Bank of Malone v. Tulloch, 55 AD2d 773, 389 N.Y.S.2d 494; Crossland Mtge. Corp. v. Frankel, 192 AD2d 571, 596 N.Y.S.2d 130).
The surplus realized at a foreclosure sale is not a general asset of the mortgagor whose property was divested by the foreclosure (the owner of the equity of redemption). Instead, the surplus stands in the place of the land for purpose of distribution among persons who have vested interests or liens on the property. Chase Manhattan Mortg. Corporation v. Hall, 18 AD3d 413 (2nd Dept. 2005); Shankman v. Horoshko, 291 AD2d 441 (2nd Dept.2002). Thus, surplus monies take the place of the equity of redemption and for purpose of distribution are regarded as land. Dunning v. Ocean Nat'l Bank of City of NY, 61 NY 497 (1875); Ellis v. [*4]Salomon, 57 A.D. 118 (2nd Dept. 1901).
Accordingly, only a party who has a vested interest or estate in the land which is the subject of the foreclosure and which is extinguished as to the property by the foreclosure is entitled to share in the surplus. Witter v. Taggart, 78 NY2d 234 (1991); Victoria Woods Homeowners Assn. v. Gonyo, 192 AD2d 1107 (4th Dept.1993). Of course, the owner of the equity of redemption (that is, the owner whose title on the property was extinguished by the foreclosure) may assert a claim to surplus monies. However, the claim of the foreclosure holder of the equity of redemption is junior to those other valid interests terminated by the foreclosure. Chase Manhattan Mortg. Corporation v. Hall, 18 AD3d 413 (2nd Dept. 2005).
A party to a foreclosure action is not required to file a notice of claim to the surplus moneys to preserve its right to satisfaction of its lien from the surplus proceeds of the foreclosure sale." Franklin Credit Management Corp. v. Pearlman, 16 AD3d 617 (2d Dept. 2005) citing Federal Home Loan Mtge. Corp. v. Grant, 224 AD2d 656, 657, see RPAPL 1361[1]). Here, the named parties to the instant foreclosure action were not required to file a notice of claim to preserve their rights.
As illustrated on Exhibit B attached hereto, the amount owed as of the Judgment date was $1,766,231.91 (See Exhibit B line 8). The remaining issue is how much is owed from the Judgment date (i.e. January 9, 2019) to the closing date (i.e. September 19, 2024). The answer to this question is more complicated because of the time that has elapsed and considering the substantial dollar amount at issue. 
It is undisputed that a judgment creditor is entitled to 9% interest on its judgment. Marine Management, Inc. v. SECO Management, Inc., 80 NY2d 886 (1992)(pursuant to CPLR 5003, "[e]very money judgment shall bear interest from the date of its entry" and, pursuant to CPLR 5004, such "[i]nterest shall be at the rate of nine per centum per annum"). In this case, 9% interest on the $1,766,231.91 Judgment is $435.51 [FN3]
per day. Moreover, 2,038 days elapsed between the Judgment and closing which equates to $887,569.38 of interest.[FN4]
None of the parties at the hearing held on March 5, 2025 presented evidence, case law, testimony, or arguments regarding who should be responsible to pay $887,569.38 of interest.[FN5]
As such, the Court breaks down the 2,038 days as follows:
First, the Court looked at the period from the Judgment (i.e. January 9, 2019) to the date of the auction sale (i.e. August 16, 2022) amounting to 1,315 days. During this time, defendant Lynch filed several motions, orders to show cause, and one appeal. There is nothing in the record to evidence that plaintiff delayed the sale during the period after the Judgment and before [*5]the auction sale.[FN6]
Accordingly, the Court finds that plaintiff is entitled to 1,315 days of interest during this period amounting to $572,695.65.[FN7]
(See Exhibit B line 9).
The Second period the Court looked at was from the auction sale (August 16, 2022) to the closing (September 19, 2024) amounting to 723 days. The answer to this question lies with the plain meaning of the Judgment which states in pertinent part:
"ORDERED that the property is sold in "as is" condition as of the date of sale, the Purchaser assumes all risk of loss or damage to the property from the date of the sale until the date of closing, and the sale is subject to the following items, which are neither valid exceptions to clear title nor valid reasons to adjourn the closing:
. . . . . . .
G. Any rights pursuant to CPLR § 317, § 2003, and § 5015 or any appeal of the underlying action."
The consequence of plaintiff's decision to adjourn the closing or hold same in abeyance cannot be "charged" to defendant; the Judgment's plain language clearly states that any motions under CPLR 5015 or an appeal is 
not a valid reason to adjourn the closing. Accordingly, the Court finds that plaintiff is not entitled to interest during this period — with one caveat. By Court Order dated December 4, 2023, it granted motion sequence number 009 vacating the Judgment; 111 days later the Court vacated its own order vacating the Judgment. [See NYSCEF Doc. Nos. 99, 142]. This 111-day period that the Judgment was vacated inured to Defendant Lynch's benefit because, as she represented to the Court, she had a contract of sale and was prepared to pay plaintiff in full. For reasons unknown to the Court, that contract never closed. As such, plaintiff is entitled to 111 days interest at $435.51 per day for a total of $48,341.61. See Exhibit B line 9.
When giving proper credits as set forth above and as reflected on Exhibit B, this Court determines that there is a $143,532.67 surplus. See Exhibit B line17. Defendant Lynch's calculation that she [FN8]
is entitled to a $630,864.40 surplus is denied for all the reasons stated herein, including her starting with a payoff letter from November 2023 rather than the Judgment.
Finally, Defendant Lynch argues that the referee failed to comply with RPAPL 1351(1) which delay prejudiced Defendant Lynch. 
RPAPL 1351(1) was amended, effective December 20, 2016, to provide that a judgment of foreclosure and sale "shall direct that the mortgaged premises, or so much thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of the action, and which may be sold separately without material injury to the parties interested, be sold by or under the direction of the sheriff of the county, or a referee within ninety days of the date of the judgment."
It is Defendant Lynch's position that the result of this failure to comply with the statute is that the Supreme Court lacked authority to proceed with a foreclosure sale. There are many reasons why this argument lacks merit.
First, "[a] defendant in default is not entitled to affirmative relief of a non-jurisdictional nature absent vacatur of his or her default." Bank of NY Mellon v. Lawson, 176 AD3d 1155 (2d Dept. 2019). Here, Defendant Lynch does not dispute that she has been in default in answering the complaint for over a decade and her attempts to vacate her default were previously denied by this Court.
Second, even if Defendant Lynch can be heard on this argument, which she cannot, the first foreclosure sale was scheduled for April 10, 2019 - 78 days after the judgment of foreclosure and sale was entered on January 22, 2019 [NYSCEF Doc. No. 44][FN9]
 — well within the 90-day statutory period. Thus, the original scheduling of the foreclosure sale complied with the provision in RPAPL 1351(1). See Wells Fargo Bank, N.A. v. Malik, 203 AD3d 1110 (2d Dept. 2022).
Third, to vacate the Judgment or set aside the sale under RPAPL 1351(1), a borrower would have to show that the "delay of the foreclosure sale prejudiced a substantial right." Wells Fargo Bank, N.A. v. Singh, 204 AD3d 732, 734 (2d Dept. 2022). Defendant Lynch has failed to satisfy her burden in this regard by failing to provide testimony, documentary evidence, evaluation, calculation or argument evidencing how the delay was not caused by her own actions and second how the delay prejudiced her. Indeed, during this period she lived mortgage and tax-free in a $2.4 million dollar home. The only mention of prejudice is Defendant Lynch's bare allegation that the "recently filed Report of Sale illustrate[s] the huge financial impact to Lynch for this delay." [NYSCEF Doc. No. 266 page 9.] Obviously, the bare allegation cannot form a basis to vacate a sale that took place over 2 years ago or the Judgment entered over 6 years ago.
Finally, Defendant Lynch has moved on more than one occasion to vacate the Judgment. Indeed, in motion sequence no. 006, filed September 13, 2022, she moved to vacate the notice of sale, Judgment, referee's report of sale, and to dismiss the action. One of the arguments in support of her motion was plaintiff's failure to comply with RPAPL 1351(1). [NYSCEF Doc. No. 19 ¶¶5(h), 83-86]. Inasmuch as that motion was denied, law of the case doctrine bars her from relitigating this issue. The law of the case doctrine operates to foreclose re-examination of the issue absent a showing of subsequent evidence or change of law. Wells Fargo Bank, N.A. v. Archibald, 211 AD3d 1081 (2d Dept. 2022). 
It cannot be overstated that Defendant's behavior in constantly filing motions and advancing arguments regarding issues already decided is another example of why this Court has deemed Defendant Lynch a vexatious litigant; Defendant Lynch raises the same issues before the Court, multiple times, without respect for prior orders of this Court. See generally NYSCEF Doc. Nos. 234 and 248. Defendant Lynch continues to advance arguments that she is not a vexatious litigant. In her Reply she states that "[j]ust because relief is denied by the court does not mean it is frivolous." [NYSCEF Doc. No. 271 page 7]. This statement highlights that Defendant Lynch fails or refuses to understand that she is prohibited from making the same argument repeatedly after those same issues have been addressed by the Court on many [*6]occasions. Declaring Defendant Lynch a vexatious litigation is justified when considering her pattern of duplicative motion practice and certainly contributed to the excruciatingly long duration of this case.
Accordingly, Defendant Lynch's motion is granted to the extent that the Court finds there exists a surplus and appoints a referee to ascertain and report whether, and in what priority, there exists any other person or entity who has a lien on surplus money.
Dated: May 2, 2025
Hon. C. Stephen Hackeling, J.S.C
EXHIBIT A

 Bank of America v. Maura Lynch 026461/2012

Line #

Language in the Judgment

Dollar amount

1

Amount due as determined by the Court upon this motion of principal

$1,264,988.47

2

Interest to date

$405,766.05

3

Escrow amounts for taxes and insurance through March 5, 2014

$44,913.94

4

For the sum of 

$1,715,668.46

5

And added to this amount such taxes and insurance costs as have been paid by Plaintiff for the maintenance of the property since March 6, 2014 to the sale (i.e. 8/16/2022)[FN10]

$ 0.00

6

Sum

$1,715,668.46

[*7]7

With interest added to this sum at the rate of $138.53 per day beginning on 1/9/2018 for prejudgment interest through and including the date judgment is entered [FN11]
by the Clerk of the Court (i.e. January 9, 2019) Calculation is 365 days at $138.53 per day 

8

Sum

$1,766,231.91

9

And upon this sum of principal and interest shall be added interest at the rate of nine percent per annum until such amount is paid in full to plaintiff after the 
closing of the sale of the subject premises (1/10/2019 - 9/19/2024). 9% interest on $1,766,231.91 is $435.51 per day

10

Less adequate protection payments

$125,783.32 [FN12]

11

Sub-total owed

$

[*8]12

Plus Attorney fees of $2,450 is awarded to plaintiff as reasonable legal fees with interest at the statutory rate from 1/9/2019 - 9/19/2024 is $2,450 times 9% is $.60 per day for 2,080 days is $1,248.00 of interest

$3,698.00

13

Plus Referee's fee

$500.00

14

Plus Expenses of sale

$1,040.10

15

Total amount owed to plaintiff per JFS

16

Less bid at sale

$2,410,256.62

17

Surplus/Deficiency

EXHIBIT B

Bank of America v. Maura Lynch 026461/2012

Line #

Language in the Judgment

Dollar amount

1

Amount due as determined by the Court upon this motion of principal

$1,264,988.47

2

Interest to date

$405,766.05

3

Escrow amounts for taxes and insurance through March 5, 2014

$44,913.94

4

For the sum of 

$1,715,668.46

[*9]5

And added to this amount such taxes and insurance costs as have been paid by Plaintiff for the maintenance of the property since March 6, 2014 to the sale (i.e. 8/16/2022)[FN13]

$ 0.00

6

Sum

$1,715,668.46

7

With interest added to this sum at the rate of $138.53 per day beginning on 1/9/2018 for prejudgment interest through and including the date judgment is entered [FN14]
by the Clerk of the Court (i.e. January 9, 2019) Calculation is 365 days at $138.53 per day 

$50,563.45

8

Sum

$1,766,231.91

9

And upon this sum of principal and interest shall be added interest at the rate of nine percent per annum until such amount is paid in full to plaintiff after the 
closing of the sale of the subject premises (1/10/2019 - 9/19/2024). 9% interest on $1,766,231.91 is $435.51 per day

$572,695.65          $48,341.61

[*10]10

Less adequate protection payments

 <$125,783.32[FN15]
>

11

Sub-total owed

$2,261,485.85

12

Plus Attorney fees of $2,450 is awarded to plaintiff as reasonable legal fees with interest at the statutory rate from 1/9/2019 - 9/19/2024 is $2,450 times 9% is $.60 per day for 2,080 days is $1,248.00 of interest

$3,698.00

13

Plus Referee's fee

$500.00

14

Plus Expenses of sale

$1,040.10

15

Total amount owed to plaintiff per JFS

$2,266,723.95

16

Less bid at sale (See NYSCEF Doc. No. 262)

<$2,410,256.62>

17

Surplus

$143,532.67

Footnotes

Footnote 1:To the extent there is a deficiency owed to plaintiff, same is discharged under 11 U.S.C. § 727 by order of the Bankruptcy Court dated March 28, 2019 [NYSCEF Doc. No. 62].

Footnote 2:See Exhibit A copy of the flowchart provided to the parties on January 29, 2025.

Footnote 3:$1,766,231.91 times 9% = $158,960.87 divided by 365 days is $435.51.

Footnote 4:2,038 days times $435.51 per day is $887,569.38.

Footnote 5:The flowchart handed to the parties in Court on January 29, 2025, shows that Line #9 was left blank. The Court said, "I would be happy to adjourn this, but I want you all to take this flowchart and get us the answer to the questions."

Footnote 6:Plaintiff was prohibited from scheduling a foreclosure sale during the COVID pandemic between March 8, 2020 and October 23, 2020.

Footnote 7:1,315 days times $435.15 per diem is $572,695.65.

Footnote 8:Defendant Lynch is not entitled to surplus money until all judgment creditors are paid in full.

Footnote 9:Page 2 of the judgment of foreclosure and sale states that the "date of the Judgment is deemed the date it is entered." Here, the judgment was entered January 22, 2019.

Footnote 10:Page 4 of the JFS states that the "purchaser shall be responsible for payment of taxes accruing after the sale."

Footnote 11:Page 2 of the JFS states that "the date of the Judgment is deemed the date it is entered."

Footnote 12:To the extent that these payments were made monthly between 7/2019-4/2021, the interest calculation should change every time there is a payment made.

Footnote 13:Page 4 of the JFS states that the "purchaser shall be responsible for payment of taxes accruing after the sale." 

Footnote 14:Page 2 of the JFS states that "the date of the Judgment is deemed the date it is entered."

Footnote 15:To the extent that these payments were made monthly between 7/2019-4/2021, the interest calculation should change every time there is a payment made. However, none of the parties provided an interest calculation so the Court will credit defendant with the payments as if made in a lump sum.